IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM I. KOCH,                            )
OXBOW ENERGY, INC.,                         )
W. I. KOCH HOLDINGS I,                      )
W. I. KOCH HOLDINGS II,                     )
W. I. KOCH HOLDINGS IV,                     )
W. I. KOCH HOLDINGS VII,                    )
W. I. KOCH HOLDINGS VIII,                   )
W. I. KOCH HOLDINGS X,                      )
W. I. KOCH HOLDINGS XV,                     )
W. I. KOCH HOLDINGS XVI,                    )
W. I. KOCH HOLDINGS XVII,                   )
W. I. KOCH HOLDINGS XVIII,                  )
W. I. KOCH HOLDINGS XIX,                    )
ROCKET OIL COMPANY,                         )
UNITED STATES TRUST COMPANY OF              )
NEW YORK, as Trustee under                  )
Agreement of Trust dated                    )
October 23, 1981, as amended,               )
and under Declaration of Trust              )
dated June 1, 1966, on their own            )
behalf and on behalf of a class             )
similarly situated,                         )
                                            )
                Plaintiffs,                 )
                                            )
    vs.                                     )   Civil Action No. 85-1636-C
                                            )
KOCH INDUSTRIES, INC.,                      )
CHARLES G. KOCH and                         )
STERLING V. VARNER,                         )
                                            )
                Defendants.                 )
_____)

FILED
JUN - 7 1985
ARTHUR G. JOHNSON, Clerk
by Sally Arbuckle, Deputy

COMPLAINT

Plaintiffs allege:

## JURISDICTION AND VENUE

1.  This is an action for recovery of damages and other relief brought as a class action by and on behalf of former shareholders in Koch Industries, Inc. who sold their shares of stock to the defendant Koch Industries, Inc. in a Stock Purchase and Sale transaction closed on June 10, 1983.

2.  The Court has jurisdiction by reason of 15 U.S.C. §§ 77v, 78aa, 28 U.S.C. §§ 1331, 1332(a), 1337(a), and the principles of pendent jurisdiction. The amount in controversy, exclusive of interest and costs, exceeds $10,000. Many of the acts alleged were carried out by the use of various means and instrumentalities of interstate commerce. Venue is proper in this district pursuant to 15 U.S.C. §§ 77v, 78aa, and 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

3.  Plaintiffs are identified as follows:

    a.  William I. Koch is a citizen and resident of the Commonwealth of Massachusetts.

    b.  Oxbow Energy, Inc. and the corporate plaintiffs designated as W. I. Koch Holdings I through XIX, as shown in the caption, are all incorporated under the laws of the State of Delaware, with their principal office and place of business in Wilmington, Delaware, with the plaintiff William I. Koch as the sole stockholder.

c.   Rocket Oil Company is a corporation organized and existing under the laws of the State of Oklahoma, with its principal office and place of business in Oklahoma.

d.   United States Trust Company of New York is a trust company incorporated under the laws of the State of New York, with its principal office and place of business located in the State of New York.  In the transactions hereinafter described, United States Trust Company of New York acted as Trustee under Agreement of Trust dated October 23, 1981, as amended, and under Declaration of Trust dated June 1, 1966.

4.   Defendant Koch Industries, Inc. is a corporation organized and existing under the laws of the State of Kansas, with its principal office and place of business at 4111 East 37th Street North, Wichita, Kansas 67220.

5.   Defendants Charles G. Koch and Sterling V. Varner are, respectively, Chairman and President of Koch Industries, Inc. At all times material, they were the chief executive and managing officers and directors in effective control of the affairs of Koch Industries, Inc.  Charles G. Koch and Sterling V. Varner are citizens of the State of Kansas, residing at Wichita, Kansas.

CLASS ACTION

6.   This action arises out of breaches of warranty, fiduciary duty and failure to disclose material facts or account properly for corporate assets, property and values in connection with the execution and closing of a Stock Purchase and Sale Agreement between Koch Industries, Inc. and plaintiffs.  In

-2-

negotiating and closing a written Stock Purchase and Sale Agreement the plaintiffs identified in subparagraphs 3a., b. and c. acted in their own behalf and in behalf of other affiliated "selling shareholders" consisting of stockholders in Koch Industries, Inc. who sold their stock to the company. Upon closing of the transaction on the 10th day of June, 1983, plaintiffs and other members of the selling shareholder class sold, assigned and delivered their shares in Koch Industries, Inc. in exchange for cash and an undivided interest in certain property not yet conveyed or assigned by defendant Koch Industries, Inc. The members of the class are numerous and widely dispersed. It is impractical for them all to join as parties plaintiff in this action.

      7.   Plaintiffs' Complaint presents questions of law and fact that are common to the class, plaintiffs' claims are typical of the claims of the class, and plaintiffs will fairly and adequately protect the interests of the class. Common questions of law and fact predominate over any questions affecting only individual members of the class and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### FIRST CLAIM FOR RELIEF

      8.   Prior to sale of their shares of stock in Koch Industries, Inc., plaintiffs and the other selling shareholders, collectively, were the owners of approximately 48% of the issued and outstanding capital stock in Koch Industries, Inc. The Stock

-3-

Purchase and Sale Agreement contains, <u>inter alia</u>, the following promises, representations and warranties by Koch Industries, Inc. in respect to its purchase of the capital stock owned by the selling shareholders for the consideration paid:

> (c)  The consolidated balance sheets of the Buyer and its subsidiaries as at December 31, 1981 and December 31, 1982, and the related statements of income, retained earnings and changes in financial position for the years then ended, including the footnotes thereto, certified by Peat, Marwick, Mitchell & Co., independent certified public accountants, which have been delivered to the Principal Sellers, fairly present the consolidated financial condition and consolidated results of operations of the Buyer and its subsidiaries as at such dates and for such respective periods in accordance with generally accepted accounting principles consistently applied throughout the periods covered thereby.  The unaudited consolidated financial statements of the Buyer and its subsidiaries for the four months ended April 30, 1983, and as of April 30, 1983 which have been delivered to the Principal Sellers, fairly present the consolidated financial condition and consolidated results of operations of Buyer and its subsidiaries as of April 30, 1983 and for the four-month period then ended (subject to year-end adjustments consisting only of normal recurring accruals) in accordance with generally accepted accounting principles applied in a manner consistent with the principles applied during the fiscal year ended December 31, 1982, with the exception of changes in the handling of foreign exchange transactions.
>
> (d)  Since December 31, 1982, there has been no material change in the assets, properties, business, operations or condition (financial or otherwise) of Buyer and its subsidiaries taken as a whole.  There is no event, condition or state of facts in existence on the date hereof which is known to the Buyer or any of its officers and has not been disclosed by Buyer to the Principal Sellers and is not otherwise actually known by the Principal Sellers which if fully disclosed might materially affect the valuation of the stock of the Buyer by a prudent and knowledgeable investor, excluding events, conditions and states of fact which have an effect on the oil industry in general.  Without limiting the generality of the foregoing, neither Buyer nor any of its officers is aware of any material undisclosed

>           discoveries of oil or gas related to any property of
>           Buyer, there are no outstanding undisclosed offers or
>           agreements to purchase all or any substantial part of
>           the assets of Buyer and there are no undisclosed
>           outstanding negotiations looking to any acquisition of
>           Buyer or its shares or to any merger or consolidation
>           involving Buyer or any of its material subsidiaries or
>           any existing undisclosed agreements or agreements in
>           principle relating to the acquisition by Buyer of stock
>           or assets having a cost or value in excess of
>           $30,000,000.

Section 18 of the Stock Purchase and Sale Agreement provides, in substance, that the foregoing promises, representations and warranties would remain in force and survive the closing of the transaction.

       9.   At all times material, defendants Charles G. Koch and Sterling V. Varner were bound by fiduciary obligations to plaintiffs and the selling shareholders in Koch Industries, Inc. by reason of their position as controlling persons, directors and the chief executive and managing officers of Koch Industries, Inc.

      10.   In 1972, Charles G. Koch formed Koch Qatar, Inc. as a Kansas corporation. All of the issued and outstanding capital stock of Koch Qatar, Inc. was held directly or for the benefit of Koch Industries, Inc. Upon incorporation and for several years thereafter, Richard T. Bick was the president and chief managing officer of Koch Qatar, Inc. Until 1981, Bick was also an employee and executive officer of Koch Industries, Inc., or one of its principal subsidiaries engaged in oil and gas exploration and production activities.

-5-

11.   Koch Qatar, Inc. acquired a 35% interest in oil and gas exploration and production rights in an offshore concession granted by the government of Qatar.  Koch Qatar, Inc. held the largest percentage interest of any participant in the concession. A West German company called "Wintershall" owned a 32.5% interest in the concession and served as operator of the concession.  The concession is commonly known as the "Wintershall Concession" and the owners as the "Wintershall Consortium."  Prior to June 10, 1983, the Wintershall Consortium had invested in excess of $60 million in exploration and evaluation of the Wintershall Concession.  In excess of $21 million of the total was invested by or on behalf of Koch Industries, Inc., acting through Koch Qatar, Inc. These exploration and evaluation activities included the drilling of exploratory wells designed to test for commercial deposits of oil or gas at various depths to approximately 10,000 feet below sea level.  As exploration and evaluation activities progressed, the defendant Charles G. Koch, in reports to directors and principal stockholders of Koch Industries, Inc., including plaintiffs, represented that the Wintershall Concession had value only for production of natural gas, but by reason of the terms of the concession, the underlying agreements with Qatar, and the necessity for large capital investments for development and marketing, the Wintershall concession actually had little, if any, value and should be disposed of at any price, if a buyer could be found.

12.  In a consolidated financial statement as of April 30, 1983 (one of the financial statements warranted as alleged in paragraph 8), Koch Industries, Inc. reported the "sale of Koch Qatar" at a gain of $3½ million.  This financial statement was relied upon by the selling shareholders.

13.  Within the past year, plaintiffs have learned the following with respect to the reported "sale of Koch Qatar":

>    (a)  Koch Qatar, Inc., the Kansas corporation, continued in business with its office in Wichita, Kansas, but the required annual report to the Secretary of State due for the calendar year ended December 31, 1983, was not filed until September 11, 1984.  That report revealed that Richard T. Bick had again become president of Koch Qatar, Inc. and that all of the issued and outstanding capital stock of Koch Qatar, Inc. was held by a company named "Koch Qatar, Inc., Ltd."

>    (b)  Inspection of British Companies Acts documents revealed that Koch Qatar, Inc., Ltd. was incorporated in the United Kingdom on November 18, 1983, more than six months after the reported sale of "Koch Qatar."

>    (c)  Precautions were taken to conceal the identity of the beneficial owners of Koch Qatar, Inc., Ltd.  The company has its registered office in the quarters of Thompson & McClintock, Chartered Accountants, 70 Finsbury Pavement, London, England.  The directors of Koch Qatar, Inc., Ltd. are registered as Ulrich

Seigfried of Ruggell, Liechtenstein, Ursula Buechler of Liechtenstein and Josef Doerig of Switzerland. The shareholders of Koch Qatar, Inc., Ltd., holding one share each, are listed on the British Companies Acts records as Limag Management of Liechtenstein and Ulrich Seigfried.

(d) Attempts to identify the beneficial ownership of stock in Koch Qatar, Inc., Ltd. proved to be ineffective because the stockholders and directors of record are agents of Swiss fiduciary organizations that are secret account depositories for money and property.

(e) Koch Industries, Inc. records contain a Stock Purchase Agreement dated April 23, 1983, entered into between Koch Exploration International, Inc. (a wholly-owned subsidiary of Koch Industries) and Fides Trust Company, a Swiss corporation, under the terms of which all of the issued and outstanding shares of stock in Koch Qatar, Inc. purport to have been sold and delivered to Fides Trust Company. Fides Trust Company is one of the Swiss fiduciary organizations holding money or property for undisclosed principals.

(f) The "sale of Koch Qatar" actually resulted in a loss of several million dollars to Koch Industries, Inc. after the write off of more than $21 million in exploration costs advanced to Koch Qatar, Inc.

-8-

14. Plaintiffs allege, on information and belief, that prior to April 23, 1983, the date of the Stock Purchase Agreement between Koch Exploration International and Fides Trust Company, purporting to cover the sale of all of the stock in Koch Qatar, Inc. at a price of $3½ million, defendants were in possession of exploration reports and engineering evaluations which disclosed that the Wintershall Concession, which contains within its boundaries approximately twelve hundred and fifty (1,250) square miles, is situated over part of a Middle East structure known as the "North Field," or "North West Dome," believed to be one of the largest natural gas reservoirs in the world. Above the gas-bearing horizons there are at least three oil-bearing reservoirs containing valuable deposits of recoverable oil in place.

15. Plaintiffs allege, on information and belief, that defendants received or were aware that they could obtain offers for the purchase of the 35% interest of Koch Qatar, Inc. in the Wintershall Concession for prices that were several times the $3½ million reported for the alleged sale of Koch Qatar, Inc. stock to Fides Trust Company.

16. If the purported sale of stock in Koch Qatar, Inc. to Fides Trust Company is an actual sale transaction in the respect that neither Koch Industries nor any of its subsidiaries, officers, directors or stockholders received some additional consideration or has retained any beneficial or contingent interest in the Wintershall Concession by or through Swiss and

-9-

Liechtenstein fiduciaries, then defendants' fiduciary obligations to the selling shareholders were breached by the disposal of a corporate asset for a grossly inadequate consideration and without the disclosure by defendants of material facts within their possession and knowledge.

        17.  If the Swiss and Liechtenstein fiduciaries or their beneficiaries hold a beneficial or contingent interest in the stock of Koch Qatar, Inc., Ltd. or the Wintershall Concession for the benefit of Koch Industries, Inc. or any of its subsidiary companies, officers, directors or stockholders, or if any of those persons received or was promised additional consideration in any form, the existence of such a secret beneficial or contingent interest or consideration is fraudulent and a breach of fiduciary duties because the value of that interest or consideration was not accounted for in the Stock Purchase and Sale transaction.

        18.  By conveyances effective May 1, 1983, Koch Industries, Inc., through its wholly-owned subsidiary, Koch Exploration, Inc., acquired title to oil and gas working interest rights in the Capa-Madison Unit, a secondary recovery project encompassing an area of more than 8,000 acres, situated in Williams County, North Dakota.  Plaintiffs allege, on information and belief, that the Capa-Madison Unit was acquired by defendants under a plan to undertake enhanced recovery through fire flooding, with a potential discounted present value estimated at between twenty-five and thirty-five million dollars.  The acquisition of the Capa-Madison Unit, which occurred shortly before the Stock

Purchase and Sale transaction, was not disclosed by defendants to the selling shareholders, nor was any information disclosed by defendants concerning the value or potential of the Capa-Madison Unit as an enhanced recovery project.

19.  On April 12, 1985, the opinion of the United States Court of Appeals, Tenth Circuit, was filed in Cases No. 83-1713 and 83-1888, styled Shamas, et al. v. Koch Industries, Inc., et al.  The Court of Appeals sustained a judgment entered in the United States District Court for the District of Utah finding that agents of the defendant Koch Industries, Inc. had fraudulently misrepresented material facts concerning the drilling and production of two oil and gas wells designated as the Bates 9-1 and the Reimann 10-1 in Duchesne County, Utah.  According to the opinion, agents of Koch Industries, Inc. first represented to the owners of minerals in the production units on which the Bates and Reimann wells were located that the wells had not been drilled.  Later, the mineral owners were told that the wells, although drilled, were not producing oil or gas.  In fact, the wells were producing and were commercial wells of great value.

20.  In oil and gas reserve engineering data furnished by defendants in support of the consolidated financial statements warranted and relied upon by the selling shareholders, the Bates and Reimann wells were described either as not productive or as producing minimal quantities of oil prior to 1983 and as having little or no value in recoverable oil and gas reserves.  These

statements were untrue and were similar to the misrepresentations made to the mineral owners in the reported cases.

        21. At the time the Stock Purchase and Sale transaction was negotiated and closed, the Bates and Reimann wells were producing oil and gas wells of substantial value. Between the dates of initial completion of the two wells in 1979 and December 31, 1983, the Bates and Reimann wells had produced in excess of $12 million in gross oil and gas revenues. Plaintiffs first became aware of the facts alleged with respect to the Bates and Reimann wells shortly after the opinion of the United States Court of Appeals was filed.

        22. Since the discovery of the facts and circumstances alleged in paragraphs 10 through 21 above, plaintiffs have not had sufficient time to complete investigations and assessments of the probable values, extent and acquisition dates of assets and property now believed to have been owned by Koch Industries, Inc. or one of its subsidiary corporations at the time of the Stock Purchase and Sale transaction. Plaintiffs allege, on information and belief, that during 1982 and the first half of 1983 defendants conspired together, each aiding and abetting the other, to conceal the true value of Koch Industries, Inc., from plaintiffs and the other selling shareholders, and that defendants executed a scheme or plan designed to conceal or understate the existence and value of property and assets owned directly or beneficially by Koch Industries, Inc. by failing to disclose the existence, location, ownership or true condition of assets and property, including, but

-12-

not limited to, the underproduction of oil and gas properties and the concealment or delay of revenues and/or the development of oil and gas properties and prospects owned or acquired prior to June 10, 1983.

   23. Defendants have breached the promises, representations and warranties contained in the written Stock Purchase and Sale Agreement, as alleged in this First Claim For Relief, by failing to disclose facts, conditions and events which would affect the valuation of the shares of stock sold by the selling shareholders on June 10, 1983.

## SECOND CLAIM FOR RELIEF

   Paragraphs 3 through 23 are incorporated and plaintiffs further allege:

   24. The acts and conduct complained of in the First Claim For Relief arise from and are the result of breaches of fiduciary duty owed to plaintiffs and the other selling shareholders by the individual defendants. Plaintiffs and the selling shareholders are therefore entitled to recover compensatory damages equal to the value of all property, assets and values which were not disclosed, were concealed, or were not properly accounted for in respect of the Stock Purchase and Sale transaction.

## THIRD CLAIM FOR RELIEF

   Paragraphs 3 through 24 are incorporated and plaintiffs further allege:

25.  Defendants, with intent to deceive or recklessly, have made untrue statements of material facts and have omitted to state material facts necessary in order to make the statements made by defendants, in light of the circumstances under which they were made, not misleading in connection with the sale by plaintiffs and the selling shareholders of their shares of stock in Koch Industries, Inc.  Defendants have therefore violated Sections 12 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77l and 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder.  The selling shareholders relied upon defendants' statements and as a result suffered damages which were proximately caused by defendants' wrongful acts.  Plaintiffs and the selling shareholders are entitled to compensatory damages for defendants' conduct.

FOURTH CLAIM FOR RELIEF

Paragraphs 3 through 25 are incorporated and plaintiffs further allege:

26.  By reason of the foregoing, the individual defendants each violated Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, proximately causing plaintiffs and the other selling shareholders damages.

FIFTH CLAIM FOR RELIEF

Paragraphs 3 through 26 are incorporated and plaintiffs further allege:

27.    To the extent that defendants' misrepresentations, breaches of warranties and fiduciary duties arise or result from willful concealment or misrepresentation, defendants are guilty of fraud and deceit, for which plaintiffs and the selling shareholders are entitled to recover damages, assets, properties or values to the extent that they were overreached, together with punitive damages, in an amount sufficient to deter similar conduct by defendants and recover plaintiffs' costs of litigation, including reasonable attorney fees.

WHEREFORE, plaintiffs pray for the following relief:

First, that this action be maintained as a class action on behalf of all selling shareholders in accordance with applicable provisions and procedures under Rule 23, Federal Rules of Civil Procedure.

Second, that defendants be compelled to disclose the true and beneficial ownership of the stock in Koch Qatar, Inc., Koch Qatar, Inc., Ltd., and the 35% interest in the Wintershall Concession originally acquired by Koch Qatar, Inc., together with the true value of the 35% interest in the Wintershall Concession and the full consideration received in any sale or transfer of that interest or the stock of Koch Qatar, Inc.

Third, an award of compensatory damages equal to plaintiffs' and the other selling shareholders' pro rata share of the value of all undisclosed assets or properties owned or held for the benefit of Koch Industries, Inc. or any

of its corporate subsidiaries, or by officers, directors or stockholders in the right of the corporation at the date of the Stock Purchase and Sale transaction.

Fourth, an award of compensatory damages equal to the difference between the true value and the reported or represented value of all assets and property of Koch Industries, Inc. or any of its corporate subsidiaries at the date of the Stock Purchase and Sale transaction.

Fifth, the recovery of punitive damages according to plaintiffs' Fifth Claim for Relief.

Sixth, the recovery of costs of the action, including reasonable attorney fees, and for such other and further relief as may be shown necessary or appropriate at trial.

<u>JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL</u>

Plaintiffs demand a jury trial on all issues and designate Wichita, Kansas, as the place of trial.

                    PAUL, WEISS, RIFKIND, WHARTON & GARRISON
                    345 Park Avenue
                    New York, New York 10154
                    (212) 644-8000
                    Attorneys for plaintiffs William I. Koch,
                    Oxbow Energy, Inc., and
                    the W. I. Koch Holdings corporations

                    LINN & HELMS
                    410 Fidelity Plaza
                    Oklahoma City, Oklahoma 73102
                    (405) 239-6781
                    Attorneys for plaintiff Rocket Oil
                    Company

MILBANK, TWEED, HADLEY & McCLOY
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
Attorneys for plaintiff
United States Trust Company of
New York, as Trustee

NAJIM & BAKER
960 R. H. Garvey Building
300 West Douglas
Wichita, Kansas 67202
(316) 269-0960
Attorneys for plaintiffs

MARTIN, PRINGLE, OLIVER, TRIPLETT &
  WALLACE
300 Page Court, 220 West Douglas
Wichita, Kansas 67202
(316) 265-9311
Attorneys for plaintiffs

By /s/ Robert Martin
   Robert Martin