ENTERED ON THE DOCKET
DATE: 1/14/98

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

JAN 14  3 52 PM '98

RALPH L. DELOACH,
CLERK
BY B_____ DEPUTY
AT TOPEKA, KS.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

WILLIAM I. KOCH, et al.,

        Plaintiffs,

Vs.

        No. 85-1636-SAC

KOCH INDUSTRIES, INC., et al.,

        Defendants.

## MEMORANDUM AND ORDER

        The case comes before the court on the defendant's brief as to

questions of law for determination in advance of trial (Dk. 645), the plaintiff's

motion for leave to file surreply (Dk. 652), the Simmons plaintiffs' motion for

leave to file surreply (Dk. 653), and the parties proposed pretrial order. The

court recently asked the parties to brief certain outstanding issues of law raised

in the parties' proposed pretrial order.[1]  The court grants the plaintiffs' requests

---

[1]During the conference call on August 25, 1997, the court specifically
identified for briefing the defendants' issues of law one through three, thirteen,
and fourteen. The defendants say that issues thirteen and fourteen were resolved
after the completion of discovery and that they now withdraw those issues. The
court also asked the defendants to brief the issues raised in "Defendants'
Statement on Plaintiffs' Alleged Damages." The defendants have briefed issues

to file surreplies and further considers the defendants' objections and response to those surreplies.

## EXCLUSIVITY OF CONTRACTUAL WARRANTIES

The defendants argue that through admitted facts the plaintiffs have proclaimed their reliance on the warranties of the June 1983 Stock Purchase Agreement ("SPA") to the exclusion of any actionable reliance on the defendants' disclosures and omissions.[2] According to the defendants, the SPA warranties were the result of the plaintiffs not trusting the defendants and not believing that the defendants had disclosed all material information. The defendants argue this is established as a matter of law by several circumstances admitted by the plaintiffs in different pleadings.

The defendants argue that the following pleadings, filings and testimony evidence the plaintiffs' admitted mistrust of the defendants. In the 1982 case, the plaintiffs alleged, *inter alia*, that the defendants in breach of their fiduciary duties had withheld information from the Board of Directors and otherwise acted unlawfully and fraudulently so as to pressure "stockholders to sell their stock to the Company at a fraction of its actual value." (Dk. 645, Ex.

---

one through three under the heading of "Exclusivity of Contract Remedies" and the damages issues under "Prejudgment Interest." The court will borrow those headings for its order.

[2]The court does not consider this argument to have been decided in its prior summary judgment rulings.

2

A.) Even though the defendants had proposed to settle the 1982 lawsuit by

buying the plaintiffs' shares for more than the appraised value given by the

plaintiffs' investment bankers who had investigated Koch Industries

Incorporated, ("KII"), and even though the plaintiffs were being advised by

financial advisers and experienced lawyers, the plaintiffs remained suspicious to

the point of insisting upon certain warranties being included in the SPA. The

defendants consider these facts undisputed based upon the plaintiffs' allegations

in their third-amended complaint[3] and in their mandamus petition[4] to the Tenth

---

[3]The defendants refer, *inter alia*, to the following allegations from the third-amended complaint:

31. . . . Because of the extreme secrecy in which information about Koch
Industries was kept and time constraints created by Koch Industries,
plaintiffs were unable to conduct a full investigation of Koch Industries,
and because Goldman Sachs did not have accurate information necessary
to value Koch Industries in the Spring of 1983, the selling price was
negotiated based upon certain representations of Koch Industries and its
management, including defendants Charles Koch and David Koch.
Plaintiffs relied upon those representations and, therefore, insisted on
provisions in section 5 of the Stock Purchase and Sale Agreement that
would cause the company, Koch Industries, as well as defendants Charles
Koch and David Koch, to make warranties to the sellers concerning both
the financial condition and the operations of the company.

. . . .

37. In reliance upon the foregoing continuing warranties of Koch
Industries, Charles Koch and David Koch, on or about June 10, 1993,
plaintiffs assigned and delivered all of their shares in Koch Industries to
Koch Industries, the buyer under the Stock Purchase and Sale Agreement,
in exchange for cash and an undivided interest in certain specified
property. The assignment and delivery of the shares of plaintiffs was
made pursuant to and in reliance upon the representations of defendants
and the terms and conditions of the Stock Purchase and Sale Agreement,

3

Circuit and upon the testimony[5] of William Koch.

---

dated June 4, 1983.

. . . .

38G. The plaintiffs bargained for and relied upon the Warranties and defendants' compliance with the Warranties, including the accuracy and completeness of the representations of defendants, in valuing Koch Industries and their Koch Industries stock, and in deciding whether to sell.

[4]The defendants quote, in relevant part, the following from this pleading filed with the Tenth Circuit:

Because of the global scope of Koch Industries' operations, and the secrecy with which those operations had been conducted, plaintiffs had no opportunity to conduct a meaningful evaluation of the worth of Koch Industries' assets and thus, of the true value of the 48% equity in the Company. . . . [P]laintiffs insisted that, as a condition precedent to any such sale, Koch Industries warrant in writing the accuracy of the financial information which the Company furnished to the plaintiffs and agree that the warranties given would survive the closing of any sale of their stock. The Company did so. Relying upon those warranties, plaintiffs sold all of their stock in the Company to defendants and dismissed the lawsuit then pending. . . .

Given the prior conduct of Charles Koch and his supporters on the board of directors toward minority shareholders and management's longstanding passion for conducting the company's operations in strict secrecy, these warranties--and the stipulation that their enforceability would survive the closing of the Stock Purchase Agreement--were a required condition to the plaintiffs' willingness to sell their forty-eight percent stock interest.

[5]The defendants quote the following from page 2375 of William Koch's deposition:

I remember telling Arthur that I would not do the deal unless there were very strong representations and warranties and I remember telling him, furthermore, I would not do the deal unless David and Charles signed the representations and warranties. I remember Jimmy Linn being present and discussing with him how long it would take to do the due diligence,

4

The defendants argue that the plaintiffs' suspicion and mistrust of

the defendants and their insistence on explicit contractual warranties precludes

them from alleging and proving under their other legal theories--common-law

fraud, federal securities fraud, and breach of fiduciary duty--that they were

relying on the defendants to disclose truthfully all material information. The

defendants maintain that, as a matter of law, the plaintiffs relied instead on their

ability to sue on these warranties in the event of a breach.

In large part, the defendants stake their position on *Slaymaker v.

Westgate State Bank*, 241 Kan. 525, 739 P.2d 444 (1987). In *Slaymaker,* the

plaintiff sued for fraud alleging that he had purchased a 1962 Triumph TR-3

based on written and verbal representations that the car had only 528 miles, had

not been restored, and was in its original condition. Before purchasing the car,

the plaintiff told the seller about his concerns with the seller's representation

about the car's original condition. The plaintiff also inspected the car himself

looking for signs of reconditioning. Despite this conversation and his inspection,

the plaintiff still had doubts and again told the seller that he was reluctant to

accept the truthfulness of the seller's representations. The seller responded this

time by offering a buy-back provision if the car turned out not to be as

what we could find out in the due diligence versus the representations and warranties and saying his agreeing with me that in lieu of due diligence that we would take very strong reps and warranties but they were a deal breaker.

5

represented. The plaintiff testified that this offer ultimately induced him to buy the car.

The district court granted partial summary judgment on the plaintiff's fraud claim finding that the plaintiff had failed to prove reliance on the alleged misrepresentations. The Kansas Supreme Court affirmed. Though misrepresentations need not be the exclusive cause of the plaintiff's injury, they must be the "moving cause," that is, without those representations the "plaintiff would not have acted to his detriment." 241 Kan. at 532. Slaymaker admitted that he actively doubted the representations on the car's originality and that his doubt was "'offset' only by" the buy-back provision. 241 Kan. at 533. The Kansas Supreme Court acknowledged the rule that "[t]he mere presence of a warranty will not ordinarily prevent liability where the plaintiff has also relied on the fraudulent misrepresentations of another." 241 Kan. at 533. It further observed that the courts were divided over whether a plaintiff can rely on representations after insisting on a warranty as a precondition to entering into the transaction. *Id.* The Kansas Supreme Court applied these rules in the following way:

> [I]n the instant case, it is not the presence of a warranty *alone* that prevents a finding of justifiable reliance. In none of the cases cited above did the plaintiffs face suspicious circumstances which caused them to entertain actual doubts of the truthfulness of the fraudulent misrepresentations. In neither of these cases did the plaintiffs seek to relieve those doubts by requiring a warranty. We are not presented with the simple case in which the tortfeasor adds a warranty to his

6

misrepresentations, or where the victim requires a warranty as a part of his normal course of business. In the present case, defendant['s] . . . promise to rescind the contract if the car was not in original condition is important because it reflects plaintiff's consistent refusal to believe the representations of original condition.

. . . .

Plaintiff did not rely on the *truthfulness* of the sign at the Tulsa auto auction because he never believed it was true. Plaintiff actively doubted the truth of the claims of "original" condition. . . .

. . . .

Plaintiff, according to his own testimony, did not rely upon a belief that the representations of "original" condition were true. He actively doubted whether they were true. Rather, what plaintiff relied upon was the *possibility* that they might be true, coupled with the knowledge that he could rescind the transaction if they were not true.

241 Kan. at 534-35. The Kansas Supreme cited in support of this discussion the decision of *Humphrey v. Merriam*, 32 Minn. 197, 20 N.W. 138 (1884), and the Restatement (Second) of Torts § 548 (1976) with its corresponding comment.

The defendants argue that the plaintiffs here, just like the plaintiff in *Slaymaker*, actively doubted the completeness and truthfulness of the defendants' disclosure and, thus, insisted upon the warranties found in the SPA. The defendants point to the broad releases that the plaintiffs signed while being fully represented in the negotiations by counsel. According to the defendants, "[t]he settling plaintiffs were willing to give such a broad release, so long as their bargained-for warranties survived the closing and any investigation that might have been made." (Dk. 645, p. 7). Citing a line of decisions from other jurisdictions, the defendants argue that when a release occurs in settlement of fraud and breach of fiduciary duty claims the element of justifiable reliance

7

cannot be proved to set aside the release. Based on these arguments, the defendants ask the court to dismiss as a matter of law the plaintiffs' tort and securities law theories and to limit the plaintiffs' claims for trial to a breach of warranty theory.

Analysis

This is not a summary judgment proceeding. The defendants do not directly challenge the sufficiency of the plaintiffs' evidence. Neither side invokes summary judgment procedures, and the court does not consider them applicable to the defendants' brief. When it asked the parties to brief thirteen and fourteen of the defendants' issues of law, the court assumed there would be questions of law ripe for ruling. Based on what has been argued and the procedural posture of this case, the court believes the following to be that issue of law. Have the plaintiffs made judicial admissions concerning their reliance on the contractual warranties that preclude them from proving reliance on the defendants' disclosure of information relevant in determining KII's value? The court's analysis of this issue begins with deciding whether the plaintiffs have made any binding judicial admissions concerning their reliance on the contractual warranties.

"'Judicial admissions are formal admissions . . . which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" *Guidry v. Sheet Metal Workers Intern. Ass'n, Local 9*, 10

8

F.3d 700, 716 (10th Cir. 1993) (quoting *American Title Ins. Co. v. Lacelaw*

*Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)), *cert. denied*, 514 U.S. 1063 (1995).

The Seventh Circuit recently explained judicial admissions in these terms:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6726 (Interim Edition); *see also* John William Strong, *McCormick on Evidence* § 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, my be controverted or explained by the party. *Id.* When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, *Federal Practice and Procedure* § 6726, at 536-37.

*Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). A statement or

assertion of fact in a complaint or other pleading may serve as a judicial

admission. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir.), *cert. denied*,

116 S. Ct. 170 (1995); *Schott Motorcycle Supply v. American Honda Motor Co.*,

976 F.2d 58, 61 (1st Cir. 1992). "[S]tatements made in briefs may be considered

admissions at the court's discretion." *Guidry*, 10 F.3d at 716 (citing *Plastic*

*Container Corp. v. Continental Plastics of Okla., Inc.*, 607 F.2d 885, 906 (10th

Cir. 1979), *cert. denied*, 444 U.S. 1018 (1980)).

Courts, however, will not construe assertions as judicial

admissions where inconsistent facts are alleged as part of alternative or

9

hypothetical pleadings in the same case. *Schott Motorcycle Supply*, 976 F.2d at 61; *Garman v. Griffin*, 666 F.2d 1156, 1159 (8th Cir. 1981). Such a rule is consistent with the liberal pleading policies embodied in Rule 8 of Federal Rules of Civil Procedure. *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990), *cert. denied*, 504 U.S. 957 (1995); *Garman*, 666 F.2d at 1159-60.

To prevail on their argument, the defendants must demonstrate the plaintiffs' assertions amount to judicial admissions that the plaintiffs actually doubted the accuracy of the defendants' disclosures, that the plaintiffs' doubts were offset only by the SPA warranties, and that the plaintiffs disregarded the likelihood of the defendants' disclosures being inaccurate because of the defendants' ultimate liability under the SPA warranties.[6] What the defendants cite as admissions seem more accurately characterized as isolated allegations in

---

[6]In *Slaymaker*, the Kansas Supreme Court avoided taking a position on whether the plaintiff's insistence on a warranty standing alone would prevent a finding of justifiable reliance on other representations. The court pointed to several other circumstances, along with the warranty, that prevented a finding of reliance: (1) the plaintiff faced suspicious circumstances that caused him to actually doubt the truthfulness of the representations; (2) the plaintiff admitted his doubts were "offset" only by the warranty; and (3) the "plaintiff consciously disregarded the acknowledged possibility or probability" that the representations were not true because of his ability to rescind the transaction under the buy-back provision. 241 Kan. at 534-35. In short, the court found that the plaintiff did not rely upon the representations being true, rather he "relied upon . . . the *possibility* that they might be true, coupled with the knowledge that he could rescind the transaction if they were not true." 241 Kan. at 535.

support of alternative theories of liability. The plaintiffs did allege that the KII

was extremely secretive about information on itself and that the plaintiffs were

unable to conduct a full investigation of KII because of time constraints. This

allegation, however, does not say that throughout the settlement negotiations the

plaintiffs actually doubted the truthfulness and accuracy of the defendants'

disclosures concerning KII. As liberally construed by the court, this allegation

indicates instead that the warranties were primarily given in lieu of the due

diligence inquiry that the plaintiffs normally would have conducted[7] but for the

defendants' position and the time constraints. The plaintiffs do allege reliance

on the SPA warranties, but they do not allege that their reliance on the warranties

was to the exclusion of or in lieu of any reliance on the truthfulness of the

defendants' disclosures. *Cf. Kelley Metal Trading Co. v. Al-Jon/United, Inc.*,

835 F. Supp. 1339, 1343 (D. Kan. 1993) (no evidence that plaintiff actively

doubted certain representations and insisted on the buy-back clause because of

these representations). Indeed, the plaintiffs' third-amended complaint plainly

alleges reliance on both misrepresentations and warranties.[8] The plaintiffs' brief

---

[7] In *Slaymaker*, the Kansas Supreme Court distinguished the pending matter from "the simple case in which the tortfeasor adds a warranty to his misrepresentations or where the victim requires a warranty as a part of his normal course of business." 241 Kan. at 534.

[8] One of the plainest examples of the plaintiffs alleging reliance on both the warranties and the misrepresentations appears at ¶ 37 of the third-amended complaint. The plaintiffs allege there that: "The assignment and delivery of the

11

is replete with citations to the third-amended complaint of those instances where they have alleged reliance on more than the warranties. When construed in their proper context, the plaintiffs' allegations cited by the defendants do not constitute judicial admissions from which this court could find as a matter of law that the plaintiffs' reliance on the defendants' misrepresentations and omissions was not "part of the moving cause" and that absent the misrepresentations and omissions the plaintiffs would still have sold their shares on these terms. The terms of the plaintiffs' releases do not establish as a matter of law the plaintiffs' reliance on warranties to the exclusion of other disclosures and omissions.[9] In

_____

shares of plaintiffs was made pursuant to and in reliance upon the representations of defendants **and** the terms and conditions of the Stock Purchase and Sale Agreement, dated June 4, 1983." (emphasis added).

[9]As argued by defendants, Kansas law does favor settlement and does not permit the repudiation of settlement agreements absent bad faith or fraud. *Fieser v. Stinnett*, 212 Kan. 26, 31, 509 P.2d 1156 (1973). The defendants cite a line of decisions from other jurisdictions holding that in settlement of fraud claims a party cannot justifiably rely on representations made by the allegedly dishonest party in connection with the compromise and settlement. *See, e.g., Finn v. Prudential-Bache Securities, Inc.*, 821 F.2d 581, 585-86 (11th Cir. 1987), *cert. denied*, 488 U.S. 917 (1988); *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984); *Metrocall v. Continental Cellular*, 246 Va. 365, 437 S.E.2d 189, 194-95 (Va. 1993); *Jankovich v. Bowen*, 844 F. Supp. 743, 748 (S.D. Fla. 1994); *but see Chase v. Dow Chemical Co.*, 875 F.2d 278, 283 (10th Cir. 1989) (rejected the general proposition that "one is never justified in believing anything represented by an adversary to a dispute that involves a claim of fraud."). The defendants do not cite any Kansas case where such a proposition was recognized or applied in similar circumstances, nor has the court found any. Rather than extend this order with a discussion of this proposition and its consistency with relevant precedent, this court simply rejects the notion that it can rule at this time as a matter of law that the plaintiffs were not justified in relying on the alleged

12

short, from what has been presented and argued, the court cannot find that as a matter of law the plaintiffs acted in reliance on their ability to sue to recover damages for breach of the bargained-for SPA warranties and not in reliance on the truthfulness and accuracy of the defendants' disclosures. The court denies the defendants' requested relief on this issue.

## PREJUDGMENT INTEREST

Federal law governs an award of prejudgment interest on a federal securities law claim. *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 (10th Cir. 1988). Under federal common law, the decision whether to award prejudgment interest rests within the court's sound discretion in balancing the different equitable considerations. *Motion Pictures Ass'n of America, Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992). ; *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d at 1255 n. 43. Prejudgment interest compensates for the time value of money, *Motion Picture Ass'n of America, Inc. v. Oman*, 969 F.2d at 1157, and "'is an element of [plaintiff's] complete compensation,'" *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). It compensates the injured party

---

misrepresentations and omissions made in connection with the settlement of the earlier litigation. This proposition, however, may be an appropriate topic to include in the jury instructions on reliance. The defendants also throw out the argument that the hostile and adversarial relations between the parties precludes the plaintiffs from staking their reliance on the asserted fiduciary duty owed by Charles Koch and David Koch as corporate officers or insiders. Again, this may be a matter for the jury instructions, but it does not impact the court's finding above on the lack of judicial admissions.

13

"for being deprived of the monetary value of his loss from the time of the loss to

the payment of the judgment." *U.S. Industries, Inc. v. Touche Ross & Co.*, 854

F.2d at 1256. Though "ordinarily awarded" unless "some justification" exists

for denying it, prejudgment interest "is not recoverable as a matter of right." *Id.*

The award is subject to "'fundamental considerations of fairness.'" *Id.* (citation

omitted). Thus, the trial court analyzes a demand for prejudgment interest under

federal law by deciding first whether the award would serve to compensate the

injured party and second whether the equities override the goal of compensating

the plaintiff. *Id.*; *see Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 763-64

(10th Cir. 1997).[10]

State law governs an award of prejudgment interest on pendent

state law claims. *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d at 1255.

---

[10]The Supreme Court in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176
(1989), listed some of factors relevant in deciding whether to grant prejudgment
interest:

> In deciding if and how much prejudgment interest should be granted, a
> district court must examine . . . matters encompassed within the merits of
> the underlying action. For example, in a federal securities action such as
> this case, a district court will consider a number of factors, including
> whether prejudgment interest is necessary to compensate the plaintiff
> fully for his injuries, the degree of personal wrongdoing on the part of the
> defendant, the availability of alternative investment opportunities to the
> plaintiff, whether the plaintiff delayed in bringing or prosecuting the
> action, and other fundamental considerations of fairness. (citations
> omitted). These considerations are intertwined in a significant way with
> the merits of the plaintiff's primary case as well as the extent of his
> damages.

14

Under Kansas law, it is a matter of judicial discretion to allow prejudgment

interest. *Miller v. Botwin*, 258 Kan. 108, 119, 899 P.2d 1004 (1995). The

general rule of law applicable to both tort and contract claims is that

prejudgment interest is not allowable unless the claim for damages becomes

liquidated.[11] *See, e.g., Royal College Shop v. Northern Ins. Co. of N.Y.*, 895

F.2d 670, 675 (10th Cir. 1990) (contract); *Kilner v. State Farm Mut. Auto. Ins.*

*Co.*, 252 Kan. 675, 686-87, 847 P.2d 1292 (1993) (contract); *Kearney v. Kansas*

*Public Service Co.*, 233 Kan. 492, 505, 665 P.2d 757 (1983) (tort); *Sanders v.*

*Park Towne, Ltd.*, 2 Kan. App. 2d 313, 320, 578 P.2d 1131, *rev. denied*, 224

Kan. clxxxvii (1978) (tort).[12] An exception to this general rule exists "'where

---

[11]Kansas appellate courts do not make any real effort at distinguishing between tort or contract claims on the general law of prejudgment interest. There may be an arguable distinction based on certain decisions holding that prejudgment interest *must be awarded* on a liquidated claim for damages upon a contract that is either express or implied. *In re Tax Protests of Midland Industries, Inc.*, 237 Kan. 867, 868, 703 P.2d 840 (1985); *Federal Land Bank of Wichita v. Vann*, 20 Kan. App. 2d 635, 641-42, 890 P.2d 1242 (1995). "'A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation.'" *Miller v. Botwin*, 258 Kan. 108, 119, 899 P.2d 1004 (1995) (citation omitted). Because the damages here plainly are not liquidated, this distinction is of no significance in this case.

[12]The plaintiffs cite *Aetna Casualty and Surety Company v. Hepler State Bank*, 6 Kan. App. 2d 543, 630 P.2d 721 (1981), and *Citizen State Bank v. Shearson Lehman Brothers, Inc.*, 874 F. Supp. 307 (D. Kan. 1994), for the proposition that under Kansas law the award of prejudgment interest on "non-contract claims (such as plaintiffs' claims for fraud and for breach of fiduciary duty) presents no issue whether or not those claims are 'liquidated.'" (Dk. 649, p. 17 n.13). Since the Kansas Supreme Court has the last word on matters of

15

necessary to arrive at full compensation, a court may in the exercise of its discretion award interest or its equivalent as an element of damages even where the primary damages are unliquidated.'" *Henderson v. Hassur*, 225 Kan. 678, 689, 594 P.2d 650 (1979) (quoting *Lightcap v. Mobil Oil Corporation*, 221 Kan. 448, Syl. ¶ 11, 562 P.2d 1, *cert. denied*, 434 U.S. 876 (1977)). Thus, a court has the discretion to award prejudgment interest on an unliquidated claim when the defendant keeps and makes actual use of the money, the plaintiff loses the use of the money, and the award of interest is necessary for full compensation. *Farmers State Bank v. Production Cred. Ass'n of St. Cloud*, 243 Kan. 87, 102, 755 P.2d 518 (1988); *Henderson v. Hassur*, 225 Kan. at 689-90. "'Considerations of fairness and traditional equitable principles are to guide the exercise of this discretion.'" *Wichita Fed'l Savings & Loan Ass'n v. Black*, 245 Kan. 523, 544, 781 P.2d 707 (1989) (quoting *Lightcap*, 221 Kan. at 468).

      Based on its understanding of federal law and Kansas law,[13] an

---

Kansas law, the court will follow the rules as stated in the cases of *Wichita Fed'l Savings & Loan Ass'n v. Black*, 245 Kan. 523, 544, 781 P.2d 707 (1989); *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 505, 665 P.2d 757 (1983); *Henderson v. Hassur*, 225 Kan. 678, 689, 594 P.2d 650 (1979). The plaintiffs' citation of *Aetna Casualty and Surety Company v. Hepler State Bank* is questionable, for the Kansas Court of Appeals' holding appears limited to conversion claims. "The rule of these authorities is that in case of conversion interest is allowed by way of damages." 6 Kan. App. 2d at 553.

[13]The court also took a quick glance at prejudgment interest law in Mississippi, Texas and Oklahoma.

16

award of prejudgment interest on the plaintiffs' unliquidated claims rests in sound judicial discretion of the court. In the event of a jury verdict for the plaintiffs, the court will conduct subsequent proceedings, if necessary, to determine whether an award of prejudgment interest is necessary, fair and equitable and to determine what rate of interest would be appropriate. The court intends to instruct the jury that they should not consider interest or the time value of money in their calculation of any damages.

## OTHER MATTERS

Choice of Law. The parties have stipulated to which law governs the different counts, except for count VI of the third amended complaint.[14] Asserted on behalf of the plaintiffs L.B. Simmons Energy, Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly Antoinette Andres Cox Farabee and Ronald W. Borders ("Simmons plaintiffs"),[15] count VI alleges that the misrepresentations and omissions are actionable as common-law "fraud under the laws of Texas, Oklahoma, Mississippi, and possibly other states, and also . . . [as violations of]

---

[14] As stated in the pretrial order, the parties have stipulated that federal law governs counts I and II of the third amended complaint and that Kansas law govern counts III, IV, and V of the third amended complaint.

[15] These plaintiffs refer to themselves as the "Simmons Plaintiffs." It should be noted that Louis Howard Andres Cox no longer appears in this suit as an individual plaintiff having voluntarily dismissed with prejudice his action against the defendants. (Dk. 638).

17

Tex. Rev. Civ. Ann. art. 581-33 (Vernon 1964); Tex. Bus. & Com. Code § 27.01

(Vernon 1983); and Okla. Stat. Ann. tit. 15, §§ 57-60 (West 1983)." (Dk. 522, ¶

80). Consistent with that count, the plaintiffs have included as an issue of law

the following:

> K. Whether the law of Texas, Oklahoma, and Mississippi govern the
> state and common law fraud claims of plaintiffs L.B. Simmons Energy,
> Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis
> Howard Andres Cox, Paul Anthony Andres Cox, Holly Andres Cox
> Farabee, and Ronald W. Borders, under Count VI of the Third Amended
> Complaint.

The Simmons plaintiffs refer to the law from these other states in opposing the

defendant's brief concerning prejudgment interest.

The defendants argue the Simmons plaintiffs should be required to

brief the applicability of these other states' laws in the event that the court allows

the plaintiffs to assert more than the breach of warranty claims. The court agrees

that in the absence of a stipulation the parties need to brief this issue in advance

of trial. Having allowed the plaintiffs at this time to proceed on more than their

warranty theory, the Simmons plaintiffs should promptly brief this choice of law

issue. In doing so, the parties should consider the following statement of law.

In Kansas, tort actions are governed by the *lex loci delicti* doctrine,

that is, the substantive law of the state where the tort occurred applies. *Ling v.

Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985). Under this doctrine,

"the situs of the injury determines the governing law," even if the tortious act

18

occurred in another state. *Id.* "In a misrepresentation or fraudulent omission claim, the 'last event' is the injury; the 'place of the wrong,' therefore, is where the loss is sustained, not where the fraud or misrepresentations were made." *Steele v. Ellis*, 961 F. Supp. 1458, 1463 (D. Kan. 1997) (citations omitted). Thus, the governing law comes from the state where the plaintiff felt the effects of the fraud. *Maberry v. Said*, 911 F. Supp. 1393, 1399 (D. Kan. 1995); *see Thomas v. Talbott Recovery Systems, Inc.*, ---F. Supp.---, 1997 WL 687936, at *4 (D. Kan. Oct. 20, 1997) ("Because plaintiff alleges financial injury in this case, he felt the wrong in Kansas, where he is a resident."); *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1286 n.2 (D. Kan. 1997) (similar statement).

Punitive Damages. Punitive damages are not available in a private action under Rule 10b-5. *deHass v. Empire Petroleum Co.*, 435 F.2d 1223, 1232 (10th Cir. 1970). "'[B]ifurcation of trials is permissible in federal court even when such procedure is contrary to state law.'" *Shugart v. Central Rural Elec., Co-op.*, 110 F.3d 1501, 1504 (10th Cir. 1997) (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993)). The court is giving serious consideration to bifurcating the trial so that the jury would decide in the first proceeding the defendants' liability for compensatory and exemplary damages and the amount of compensatory damages. If the jury found liability for exemplary damages, then the appropriate trier of fact would determine the amount of exemplary damages in the second proceeding.

19

In the event that the court were to bifurcate the proceedings in the manner described above, the court would modify its earlier order (Dk. 517) filed August 24, 1992, to the extent that the defendants would not be required to produce evidence of their net worth unless the jury returned a verdict finding the defendants liable for exemplary damages.

Proposed Pretrial Order. Attached to this order is the court's final proposed pretrial order, which reflects the court's rulings on the parties' objections and makes other changes suggested by the court.[16] As for the court's rulings on the parties' objections, the court considers the record to have been made and would treat further comments on those rulings as if a motion to reconsider that is due no later than January 26, 1998. As for the other suggested changes, the parties will have until January 26, 1998, to file their written objections. The court shall consider any filed objections or additional comments and promptly enter the final pretrial order.

For the ease of the parties, the court has noted all changes and included all significant rulings within the proposed final pretrial order. The court intends to delete all language with lines through it and to add all language that is shaded. The court's rulings and reasons are bracketed and will be deleted from the final pretrial order. The court will attach the parties' witness lists to the

[16]To make a record of the parties' objections, the court also attached to this order the parties proposed pretrial order submitted in August of 1997.

20

final pretrial order.

IT IS THEREFORE ORDERED that the plaintiff's motion for

leave to file surreply (Dk. 652), and the Simmons plaintiffs' motion for leave to

file surreply (Dk. 653) are granted;

IT IS FURTHER ORDERED that the defendants are denied all

relief requested in their brief concerning questions of law (Dk. 645);

IT IS FURTHER ORDERED that the parties have until January

26, 1998, to file any written objections or comments concerning the final

proposed pretrial order attached hereto.

Dated this _14th_ day of January, 1998, Topeka, Kansas.

Sam A. Crow, U.S. District Senior Judge

21

 

PARTIES' PROPOSED PRETRIAL ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM I. KOCH, et al.,                )
                                        )
                    Plaintiffs,         )
                                        )
vs.                                     )      Civil Action No. 85-1636-C
                                        )
KOCH INDUSTRIES, INC., et al.,          )
                                        )
                    Defendants.         )

## PRETRIAL ORDER

A pretrial status conference was held in the above case on the 25th day of August, 1997.

1.    **APPEARANCES**

Counsel present and participating were:

**For the plaintiffs:**

Fred H. Bartlit, Jr.
Bartlit Beck Herman Palenchar & Scott
54 West Hubbard Street
Suite 300
Chicago, Illinois  60610
(312) 494-4400

Donald E. Scott
Bartlit Beck Herman Palenchar & Scott
511-16th Street, Suite 700
Denver, Colorado  80202
(303) 592-3100

Attorneys for Plaintiffs
William I. Koch, Oxbow Energy,
Inc., Spring Creek Art
Foundation, and Northern Trust
Company

Russell E. Brooks
Eugene F. Farabaugh
MILBANK, TWEED, HADLEY &
McCLOY
1 Chase Manhattan Plaza
New York, New York  10005
(212) 530-5000

Attorneys for Plaintiffs
Frederick R. Koch and The
Fiduciary Trust Company International

Gregory S.C. Huffman
THOMPSON & KNIGHT
A Professional Corporation
3300 First City Center
1700 Pacific Avenue
Dallas, Texas 75201
(214) 969-1700

    Attorneys for Plaintiffs
    L.B. Simmons Energy, Inc.
    d/b/a Rocket Oil Company, Gay
    A. Roane Ann Alspaugh, Paul
    A.A. Cox, Holly A.A. C. Farabee,
    And Ronald W. Borders

Michael Paul Kirschner
LEE & KIRSCHNER, PLLC
3300 Liberty Tower, 100 North Broadway
Oklahoma City, Oklahoma 73102-8805
(405) 239-3300

Stephen M. Joseph
Redmond & Nazar, LLP
900 Garvey Building
200 West Douglas
Wichita, KS 67202-3089
(316) 262-8361

Attorneys for Plaintiffs
Louis Howard Andres Cox and Nations Bank,
N.A., as trustees for the Louis Howard Andres
Cox Trusts B and D

Clifford L. Malone
ADAMS, JONES, ROBINSON &
MALONE, CHARTERED
155 North Market, Suite 600
Post Office Box 1034
Wichita, Kansas 67201-1034
(316) 265-8591

Harry L. Najim
NAJIM LAW OFFICES
300 West Douglas, Suite 960
Wichita, Kansas 67202
(316) 269-0960

Attorneys For All Plaintiffs
Except Louis Howard Andres Cox

2

**For the Defendants:**

Robert L. Howard
James M. Armstrong
FOULSTON & SIEFKIN
700 NationsBank Financial Center
100 North Broadway
Wichita, Kansas  67202
(316) 267-6371

Attorneys for All Defendants

Donald L. Cordes
4111 East 37th Street North
Wichita, Kansas  67220
(316) 832-5500

Attorney for Defendants
Donald L. Cordes and Koch
Industries, Inc.


2.    **VENUE; JURISDICTION OF PARTIES AND SUBJECT MATTER; PROPRIETY OF PARTIES**

a.    The Court's jurisdiction is based on the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), federal question jurisdiction (28 U.S.C. § 1331), and diversity of citizenship between the parties (28 U.S.C. § 1332(a)).  The Court has jurisdiction of the non-federal causes of action pursuant to the principles of supplemental and pendent jurisdiction (28 U.S.C. § 1367).

Venue is proper in this district pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

Defendants stipulate and agree that jurisdiction of parties and subject matter, as well as venue, is proper in this Court.

b.    Defendants' statement as to propriety of parties: Defendants do not stipulate or agree that Oxbow Energy, Inc., The Spring Creek Art Foundation, and Northern Trust Company, purporting to be successors in interest to W.I. Koch or prior entities, or any other persons or entities who were not selling shareholders on June 10, 1983, are proper parties plaintiff or that any such entities have standing to bring all or part of the claims asserted herein. Various plaintiffs herein purport to be assignees of tort claims, and all such plaintiffs should be required to prove that any

3

such claims they purport to hold were clearly assignable under the law applicable to plaintiffs' theories of recovery.

## 3.   NATURE OF THE CASE

Plaintiffs' Statement:   This is a suit for damages by former shareholders of Koch industries, Inc. ("KII") against that privately-held company and certain individuals who were directors and officers of KII. Plaintiffs allege that they sold their KII stock to KII in June 1983 for less than its fair value. Plaintiffs allege that the defendants misrepresented the financial condition of KII, and misrepresented and/or failed to disclose information materially affecting the value of KII stock, so as to induce plaintiffs' sale of KII stock at a low price. The case arises under the Securities Exchange Act of 1934 and under state law of contract, fiduciary duty, and fraud.

Defendants' Statement and Objection:

> a.     Defendants object to plaintiffs' proposed statement for the reason that it does not correctly reflect the limited nature of this case due to the Court's prior rulings granting summary judgment in favor of defendants on various claims and allowing plaintiffs to make only limited amendments to their complaint.

> b.     Defendants believe the following statement correctly reflects the nature of this case.

> > 1.     In 1982, William Koch and other shareholders of Koch Industries (KII) filed an action against that privately held company and certain individuals who were directors and officers, claiming breach of fiduciary duties and fraud. Plaintiffs decided to sell all of their stock in the company after considering detailed evaluations of KII

4

by major investment banking firms, and executed a Stock Purchase and Sale Agreement dated June 4, 1983. Pursuant to the agreement, Koch Industries purchased all of its stock owned by the plaintiffs (approximately 48 percent of the outstanding stock) at an agreed price in excess of One Billion Dollars and, in exchange, the plaintiffs executed general releases of all claims against defendants and dismissed their lawsuit with prejudice.

2.      On June 7, 1985, William I. Koch, Oxbow Energy, Inc., Rocket Oil Company, United States Trust company of New York, as Trustee, and other former shareholders in Koch Industries filed a class action against Koch Industries, Charles Koch, and Sterling Varner. Plaintiffs alleged they were induced to sell their ownership of approximately 48% of the issued and outstanding capital stock in Koch Industries due to defendants' misrepresentation or concealment of the true value of the stock. Plaintiffs' claims included: breach of warranty, breach of fiduciary duty, securities fraud, and Common-law fraud.

3.      On November 5, 1986, this court entered an order granting in part defendants' motion to dismiss and alternative motion for summary judgment. On November 4, 1988, plaintiffs moved to amend their complaint to add David Koch, Tom Carey and Donald Cordes as defendants, and the Court thereafter allowed limited amendments to plaintiffs' claims. On July 11, 1997, The Court entered an Order granting summary judgment in favor of defendants on 9 out of 12 of plaintiffs' claims. Plaintiffs' claims are therefore now limited to the following specific assets or issues and to the alleged diminishment of the value of their stock as of June 4, 1983, as a direct result thereof:

5

(a)    The actual or planned capacity expansion at the Pine Bend Refinery;

(b)    The accounting treatment of certain losses and gains for fiscal year ended December 31, 1982.

Plaintiffs' Objections: Unlike plaintiffs' non-argumentative statement of the nature of the case, defendants' statement is not appropriate for use with the jury. Defendants' statement is a procedural summary rather than a statement of the nature of the case. It is argumentative in its phrasing and its selection of material for emphasis. Finally, it unduly limits the issues in this case in a manner contrary to the amended complaint and without support in rulings by the Court.

## 4.0. PLAINTIFFS' FACTUAL CONTENTIONS AND LEGAL THEORIES

### A. Factual Contentions

Plaintiffs make the following contentions as to the claims remaining, expressly reserving for appeal the claims previously dismissed by the Court, including but not limited to those dismissed by summary judgment in the Court's ruling dated July 11, 1997.

The Stock Purchase and Sale Agreement contained warranties by KII. One warranty (§5 (c)) provided that the audited financials of KII as of December 31, 1981 and December 31, 1982:

> fairly present the consolidated financial condition and consolidated results of operations of the Buyer [KII] and its subsidiaries as at such dates and for such respective periods in accordance with generally accepted accounting principles consistently applied throughout the periods covered thereby. The unaudited consolidated financial statements of [KII] and its subsidiaries for the four months ended April 30, 1983 and as of April 30, 1983 . . . fairly present the consolidated financial condition and consolidated results of operations of [KII] and its subsidiaries as of April 30, 1983 and for the four month period then ended ....

A second warranty (5(d)) provided that since December 31, 1982:

6

there has been no material change in the assets, properties, business, operations or condition (financial or otherwise) of [KII] and its subsidiaries taken as a whole. There is no event, condition or state of facts in existence on the date hereof which is known by [KII] or any of its officers and has not been disclosed by [KII] to the Principal Sellers and is not otherwise actually known by the Principal Sellers which if fully disclosed might materially affect the valuation of the stock of [KII] by a prudent and knowledgeable investor, excluding events, conditions and states of fact which have an effect on the oil industry in general. Without limiting the generality of the foregoing, neither Buyer nor any of its officers is aware of any material undisclosed discoveries of oil or gas related to any property of Buyer, there are no outstanding undisclosed offers or agreements to purchase all or any substantial part of the assets of Buyer and there are no undisclosed outstanding negotiations looking to any acquisition of Buyer or its shares or to any merger or consolidation involving Buyer or any of its material subsidiaries or any existing undisclosed agreements or agreements in principle relating to the acquisition by Buyer of stock or assets having a cost of value in excess of $30,000,000 . . . .

The representations and warranties by KII expressly survived the closing and any investigation made by or on behalf of the parties at any time (§18).

As part of the Stock Purchase and Sale Agreement defendants David Koch and Charles Koch each expressly represented and agreed above his signature that he was "aware of the provisions of [the Agreement] and confirm[ed] that the representations of [Koch Industries] under section 5 of the Agreement are true and correct to the best of the knowledge of such undersigned." (Exh. E)

Plaintiffs contend that defendants materially misrepresented facts, and omitted material facts, concerning the financial statements of KII (as of 12/31/81; 12/31/82; and the four months ended 4/30/83) and concerning the assets, properties, operations, condition, earnings and prospects of KII affecting the value of KII's stock as of June 10, 1983 (the closing date of the stock sale -- see §7(e) of Stock Purchase and Sale Agreement). Defendants' misrepresentations and omissions, which Plaintiffs discovered subsequent to the June 1983 stock sale, related to the following.

7

1.    **Pine Bend Refinery**

As of the date of the stock sale, defendants knew but did inform the selling shareholders that KII already was increasing, and making plans for further increasing, the crude processing capacity of the Pine Bend Refinery to approximately 145,000 B/D by June 1983; and to approximately 155,000 B/D by the end of 1983.

At the March 1983 KII shareholders and board of directors meetings, defendants made numerous false and misleading statements to the plaintiffs or their representatives regarding the dismal prospects for KII's refining business during 1983 and in the future. These statements included, among others, defendants' assertion that it "would require a substantial recovery in refining margins" for KII to make its 1983 profit plan; that KII's "cash cows are sick"; that prices would fall even further and "could result in some heavy losses" on inventories; that "the market is starting to fall greatly so that [KII's] assets are deteriorating considerably"; and similar gloomy and pessimistic statements.

Contrary to these statements, defendants hid from the selling shareholders their actions and plans to increase the capacity of the Pine Bend Refinery, to maintain or increase refining margins while simultaneously increasing volumes —despite the industry's downward trend -- and to gain access to greater volumes of low-priced Canadian crudes. Defendants' plans included delivering and selling the increased Pine Bend output into existing and new market territories to be accessed more effectively by the reversal of the direction of flow of the Williams Pipeline and by other means. Defendants expected that the Refinery's undisclosed plans for large capacity increases would be highly profitable.

Defendants failed to disclose these plans at the March 1983 meetings or prior to the June 1983 stock sale. Defendants did not disclose their true capital budget for expanding the crude capacity of the Refinery in 1983 and later years. Defendants did not disclose how their plans would

increase the value of the Refinery.

## 2. Accounting Issue

KII employed accounting methods that were designed intentionally to understate KII's earnings and assets in the financial statements. Most importantly, KII knew that the selling shareholders and their advisors would consider the apparent trend KII's earnings as a basis for estimating the value of KII shares and KII's ability to finance the buy-out price. KII therefore took steps to diminish its apparent earnings.

The following accounting practice by KII violated GAAP and constituted breaches of both warranties in the Stock Purchase and Sale Agreement (quoted above): KII failed to disclose its unusual and/or infrequently occurring losses. KII categorized these losses as recurring expenses or depreciation, thereby artificially reducing what appeared to be KII's ordinarily recurring income.

## B. Legal Theories for Recovery

Plaintiffs assert the following legal theories for recovery as to the Pine Bend Refinery: (1) breach of contract and warranty; (2) breach of fiduciary duty; 3) fraud under the common or state law; (4) securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (b) (1982), and SEC Rule l0b-5; (5) liability as controlling persons of other violators, pursuant to Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t; and (6) derivative liability as controlling persons or otherwise under the common or state law.

Within the restrictions placed by the Court's Memorandum and Order dated June 30, 1992, plaintiffs assert the following legal theories for recovery as to the accounting issue of unusual/infrequent losses: (1) breach of contract and warranty; and (2) breach of fiduciary duty.

9

## C.   Itemization of Damages

[This section (C)(1) and (C)(2) has not yet been revised, but will be revised upon plaintiffs' receipt of a modified damages report from Patricof & Co.]

### 1.   Compensatory Damages as of June 1983

Plaintiffs contend that the appropriate measure of damages is either (1) the difference between the price actually paid for their stock and the fair market value of KII stock sold on June 10, 1983, or (2) the incremental amount above $200/share (plus a share of the Santa Barbara offshore oil field) that the selling shareholders would have obtained in knowledgeable negotiations with KII for the sale of their stock, whichever is greater. In the event that the Court allows inquiry into KII's post 1985 financial condition, plaintiffs reserve the right to claim the benefit KII derived from fraudulently inducing the selling shareholders to sell.

The fair market value of KII's hidden or misstated assets and earnings at June 1983 was at least $83 per share (i.e. incremental value above the sale price). The derivation of this number is detailed in Patricof & Co.'s "Updated Report on Damages" (Nov. 4, 1992). Patricof & Co utilized the reports of plaintiffs' other experts regarding particular assets, operations, and accounting practices to determine the amount of the understatements and omissions; deducted taxes; and weighted the understatements of assets and earnings, respectively, as the market would treat them in valuing KII stock. Patricof & Co. thus derived a fair market value of the misrepresented and/or undisclosed values equaling $58 per share, to which Patricof added a premium of 35-50%. The $83/share figure stated above utilizes the $58/share plus the middle of Patricof's premium range.

10

## 2. Compensatory Damages for Time Value of Money

Plaintiffs seek compensatory damages for the deprivation of the use of their money from June 10, 1983 until judgment, a period during which KII unjustly used plaintiffs' money. Depending on the Court's instructions of law, plaintiffs will seek compensation for their lost time value of money either at a statutory rate of prejudgment interest (the Kansas statutory rate of 10% or otherwise), or by the yield of an equally-balanced portfolio of common stocks, corporate bonds, and Treasury bills performing over the same time period. Patricof & Co. has calculated the latter: a total value of $2,725 as of November 1992 for each $1,000 of value in June 1983. Patricof's number will be updated to the time of trial.

Plaintiffs reserve the right to introduce evidence of KII's or plaintiffs' actual earnings on investment capital over the period in question, in the event that defendants were to contend, or the Court were to rule, that the foregoing methods of measurement are not sufficient without proof of actual investment experience.

## 3. Punitive Damages

Plaintiffs will seek punitive damages under their nonfederal claims, in accordance with the Court's instructions of applicable law.

## 4.1 DEFENDANTS' FACTUAL CONTENTIONS AND LEGAL THEORIES

### A. Defendants' Factual Contentions

The controlling facts, highly summarized, are:

1. Neither Koch Industries, Inc. nor any of the individual defendants committed any act or made any statement, or failed to make any statement, which constitutes a breach

11

of any warranty in the Stock Purchase and Sale Agreement, a breach of any fiduciary duty, a violation of the federal securities laws, or an act or omission amounting to common law fraud. Defendants fully responded to all requests for information from plaintiffs and their numerous financial advisors, and in addition they had access to other information relating to the Company's operations and financial results, all of which were sufficient for plaintiffs to form their own conclusions regarding the value of the Company's stock.

2.     With regard to the plaintiffs' claims relating to specific assets/issues, the facts are:

(a)     The Pine Bend Refinery Expansion. Plaintiffs were aware of the existing capacity of the refinery as of the date they sold their stock in June 1983, through the information available to them and to their advisors. Plaintiffs and their advisors were further aware, through extensive information furnished to them over a period of years, including but not limited to capital expenditures approved by the Board of Directors, that the Company was in the process of expanding the refinery and that it would have additional capacity in the future months after June 1983.

(b)     Accounting Claim. Defendants deny that any of the allegations raised by plaintiffs with regard to the Company's financial statements constitute a violation of generally accepted accounting principles, and further deny the plaintiffs' allegations that the Company's financial statements did not fairly present the consolidated financial condition and consolidated results of operations of the Company and its subsidiaries. Specifically, defendants deny

12

that the Company's financial statements failed to disclose unusual or infrequently occurring losses. The losses asserted by plaintiffs in this part of their claim were neither unusual nor infrequently occurring in terms of the Company's business operations, within the meaning of generally accepted accounting principles.

## B. Defendants' Legal Theories

1. Plaintiffs cannot establish all of the elements necessary for recovery on their theories of breach of warranty, breach of fiduciary duty, violation of the federal securities laws, or common law fraud.

2. Plaintiffs have no clear and convincing evidence of any alleged fraud.

3.    Plaintiffs are limited to claims of breach of contract and/or warranty as a matter of law by reason of the express terms of the Stock Purchase and Sale Agreement, and their general releases and dismissal with prejudice of the 1982 litigation. Defendants justifiably relied on these agreements and the adjudication by dismissal with prejudice, and plaintiffs are estopped to deny the validity thereof.

4.    In 1982 and 1983, plaintiffs were suing defendants, were represented by their own attorneys, investment bankers, and other advisors, and the duties owed by individual defendants, including their duties as officers or directors of KII, must be interpreted in light of the uncontroverted facts and circumstances existing as of 1982 and 1983. Such duties were not breached by defendants.

5.    Plaintiffs have represented by pleadings herein that, because of their distrust of the defendants, plaintiffs insisted upon the written contractual warranties contained in the Stock Purchase and Sale Agreement, and that but for said written warranties, plaintiffs would not have sold their stock in the Company. Likewise, defendants received plaintiffs' general releases and dismissal of their lawsuit in reliance on that same Stock Purchase and Sale Agreement and the warranties contained therein. Plaintiffs' pleadings constitute judicial admissions and plaintiffs are therefore barred from asserting claims for fraud, securities law violations, or breach of fiduciary duty.

6.    Only those plaintiffs who actually owned stock in Koch Industries, Inc. at the time of the closing of the Stock Purchase and Sale Agreement on June 10, 1983, have any standing to sue herein, and/or are proper parties to this action, and any other plaintiffs lack

14

standing to maintain claims in this action and/or are not the real party in interest, and/or are assignees of claims for relief that cannot be assigned as a matter of law.

7.      To the extent a party plaintiff herein has sold or transferred stock, actually owned by such plaintiff on June 4, 1983, or has assigned claims or attempted to assign claims pendant thereto, such plaintiff has lost any standing to sue for, or claim damages attributable to, any such share of stock, and any such claims are barred.

8.      The applicable statutes of limitation bar any and all claims raised herein by plaintiffs against all defendants, to the extent said claims were not raised in plaintiffs' original complaint and were added only by way of amendment. In addition, plaintiffs' claims herein against the individual defendants, other than Charles Koch and Sterling Varner, were not commenced within the applicable period of limitations and all such claims are therefore time barred.

### C.      Defendants' Statement On Plaintiffs' Alleged Damages

Plaintiffs will not be able to establish liability under any theory, and their alleged damages are therefore irrelevant. Further, the consideration paid plaintiffs was substantially in excess of the fair market value of their minority stock interest in KII and plaintiffs have suffered no damages for which they are entitled to be compensated. Defendants further object to plaintiffs' allegation that they are entitled to seek damages based on the growth of Koch Industries after 1983. Plaintiffs have never before pled such a theory of recovery and such contention is not supported by law. Defendants further object to plaintiffs' claim for prejudgment interest as no such allowance is supportable under applicable law.

### D.      Plaintiffs' Objections:      Plaintiffs object to defendants' "highly summarized" statement of "controlling facts" in so far as defendants have omitted any foreseeable area of factual

15

proof they might intend to offer at trial. The purpose of this Pretrial Order is to fairly inform the

parties and the Court of the intended areas of proof at trial, so everyone can properly prepare.

5.    **STIPULATIONS**

The parties hereto stipulate and agree that:

(a)    The United States District Court for the District of Kansas has jurisdiction

of the parties hereto and the subject matter hereof.

(b)    Venue is properly laid in this District.

(c)    All proper, necessary and indispensable parties are parties hereto; except that

defendants do not thereby agree that such parties are real parties in interest or that they have

standing to maintain non-contract law claims herein for the legal reasons stated elsewhere in

this Order.

(d) Federal law governs Counts I and II of the Third Amended Complaint.

(e) Kansas law governs Counts III, IV and V of the Third Amended Complaint.

6.    **AMENDMENTS TO PLEADINGS**

Plaintiffs' Statement:   The issues in this case are those specified in plaintiffs' and defendants'

respective statements of their factual contentions and legal theories.

Defendants' Statement:        The pleadings are amended to conform to all orders of this

Court and rulings reflected in this Pretrial Order. [Plaintiffs do not understand, and hence object to,

defendants' statement in the preceding sentence because of its generality and vagueness.]

7.    **ISSUES OF FACT**

16

Plaintiffs' Statement: The following are the remaining ultimate and controlling issues of fact in dispute:

A.      Whether the defendants made false or misleading statements of material facts to plaintiffs or their representatives, or omitted to state material facts, as to the actual value of KII's assets, earnings, or operations, or the financial condition of the company.

B.      Whether there was a substantial likelihood that a reasonable shareholder would have considered the statements made and/or facts omitted to have been material to making a decision about selling KII stock in June 1983 or in agreeing to the sales price.

C.      Whether the statements and omissions made by defendants were made knowingly or with reckless disregard for the truth.

D.      Whether, with respect to the common or state law fraud claims, the statements and omissions made by Defendants were made knowingly, with reckless disregard for the truth, negligently, or with the purpose of inducing a person to enter into a sale of stock.

E.      Whether defendants occupied positions of control, or exercised control, with respect to other persons employed by or acting agents of KII who communicated false and/or misleading and/or incomplete information to the plaintiffs.

F.      Whether the persons who communicated false and/or misleading and/or incomplete information to the plaintiffs were actual and/or apparent agents of the defendants.

G.      Whether defendants fully disclosed to the plaintiffs, prior to the closing of the stock purchase on June 10, 1983, all events, conditions and facts which then existed, which were not otherwise actually known by plaintiffs, and which might have affected their valuation of KII stock.

H.      Whether any material change in the assets, properties, business, operations or

17

condition (financial or otherwise) of KII and its subsidiaries, taken as a whole, occurred between December 31, 1982 and the closing date of the stock purchase on June 10, 1983.

I.      Whether KII's consolidated balance sheets at December 31, 1981 and December 31, 1982, and the related statements of income, retained earnings and changes in financial position for the years ended, including the footnotes thereto, fairly presented the consolidated financial condition and results of operations of KII and its subsidiaries as of such dates in accordance with GAAP consistently applied throughout the periods covered.

J.      Whether KII's unaudited consolidated financial statements for the four months ended April 30, 1983 fairly presented the consolidated financial condition and results of operations of KII as of that date in accordance with GAAP consistently applied.

K.      Whether the facts that the defendants or misrepresented or failed fully to disclose to the plaintiffs would, if fully and accurately disclosed, have materially affected the valuation of the KII stock by a prudent and knowledgeable investor.

L.      Whether plaintiffs or their representatives relied upon the defendants' misrepresentations and/or omissions of fact, and thereby suffered damages which were proximately caused by the defendants' wrongful acts.

M.      Whether the individual defendants breached their fiduciary duty to the plaintiffs with regard to their misrepresentations, omissions and incomplete and misleading disclosures.

N.      Whether, and in what amount, the plaintiffs have suffered damages proximately caused by the defendants' violations and breaches of duty.

O.      Whether, and in what amount, the plaintiffs have suffered damages from the lost use of money from June 1983 to the date of judgment.

P.      Whether, and in what amount, the plaintiffs should be awarded punitive damages.

18

Q.     Whether, and in what amount, the plaintiffs should be awarded their attorneys' fees and other costs and expenses of litigation.

Defendants' Statement:  Defendants believe the controlling and ultimate issues of fact are:

1.     With respect to the accounting claim raised by plaintiffs, did the Company's financial statements fairly present the consolidated financial condition and consolidated results of operations of the Company and its subsidiaries in accordance with generally accepted accounting principles?

2.     What, if any, statements made in connection with the specific issues/assets were materially false or misleading to plaintiffs and their expert advisors?

3.     What, if any, facts material to valuation of the specific assets/issues, which were known to defendants but not kn own to plaintiffs and their expert advisors, did defendants fail to disclose?

4.     Excluding those events, conditions, and facts which have an effect on the oil industry in general, was there any event, condition or state of facts in existence on June 4, 1983, material to the specific assets/issues, known by defendants and not known by plaintiffs, which was not disclosed and which if fully disclosed would have affected the valuation of the stock by a prudent and knowledgeable investor?

5.     Were there any changes which occurred between December 31, 1982 and June 10, 1983, regarding the specific assets/issues, which were material to the business, operations or conditions (financial or otherwise) of KII and its subsidiaries, taken as a whole, which were known by defendants and not reasonably known to plaintiffs?

6.     Did plaintiffs or their representatives actually rely on any alleged misrepresentation

or omission of fact, material to the specific assets/issues, which proximately caused them actual damage in light of the total consideration paid for their stock?

7.    Was any duty owed to plaintiffs by defendants actually breached under the circumstances of the 1983 transaction?

8.    Are plaintiffs entitled to set aside for fraud the releases executed in June 1983?

9.    What, if any, actual damages have plaintiffs suffered which were proximately caused by any breach of duty owed by defendants with regard to the specific assets/issues, in light of the total consideration actually paid for their stock?

10.    Were any statements or omissions material to the specific assets/issues knowingly made or omitted by defendants with reckless disregard for the truth of such statements or omissions, for the purpose of inducing plaintiffs to sell their stock?

11.    Have the plaintiffs established all elements prerequisite to any consideration of whether plaintiffs can obtain an award of punitive damages?

## 8.    ISSUES OF LAW

Plaintiffs' Statement: (As noted at p. ___ below, defendants generally agree with the statement of issues in lettered paragraphs A-K, subject to their separate statement at p. ____.) The following are the ultimate issues of law in the case:

A.    Whether the defendants have violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, connection with the purchase of plaintiffs' KII stock pursuant the Stock Purchase and Sale Agreement dated June 4, 1983.

B.    Whether the defendants caused persons who were employed by or were agents of KII, and who were controlled by them, to violate the Securities Exchange Act of 1934 and Rule 10b-5,

20

such that the individual defendants have violated Section 20 of the Securities Exchange Act of 1934.

C.     Whether the defendants procured the plaintiffs' sale of KII stock in June 1983 and the execution of releases by plaintiffs by means of fraud.

D.     Whether the individual defendants breached their fiduciary duty to the plaintiffs.

E.     Whether the defendants breached the Stock Purchase and Sale Agreement dated June 4, 1983, and breached the contractual warranties contained therein.

F.     Whether the plaintiffs have suffered damages proximately caused by the defendants' violations and breaches.

G.     Whether the plaintiffs shall be entitled to consequential damages and/or prejudgment interest.

H.     Whether the plaintiffs shall be entitled to the appreciation in the hands of defendants of the value of the assets wrongfully obtained from plaintiffs.

I.     Whether the plaintiffs shall be entitled to an award of punitive damages.

J.     Whether the releases executed by plaintiffs shall be set aside for fraud.

Plaintiffs state that the foregoing issues are mixed questions of fact and law which, therefore, are appropriate for determination by the jury under instructions of law from the Court. Plaintiffs are presently aware of no other issues of law that may require ruling by the Court, except the following:

K.     Whether the law of Texas, Oklahoma, and Mississippi govern the state and common law fraud claims of plaintiffs L.B. Simmons Energy, Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly Andres Cox Farabee, and Ronald W. Borders, under Count VI of the Third Amended Complaint.


Defendants' Statement:

21

A.      Defendants agree that the ten issues of law stated by plaintiffs generally characterize the "ultimate issues of law in the case," but do not agree with the statement on [Plaintiffs' Draft] p. ___ [between lettered paragraphs J and K above] that such issues "are appropriate for determination by the jury."

B.      The issues of law for the Court to determine at the close of the evidence will be:

1.      Are plaintiffs' legal theories and claims concerning the warranties contained in the 1983 Stock Purchase Agreement inconsistent with, and a judicial admission which is preclusive of, plaintiffs' theories of breach of fiduciary duty, violation of securities law, or fraud with regard to the specific assets/issues?

2.      Does plaintiffs' dismissal of their 1982 lawsuit "with prejudice" and execution of releases preclude plaintiffs from any and all claims for breach of fiduciary duty or corporate or individual duty that were claimed or could have been claimed as of June 10, 1983?

3.      Do the doctrines of waiver, estoppel and laches preclude plaintiffs from setting aside for fraud the releases they executed in June 1983?

4.      Is there sufficient clear and convincing evidence for the jury to consider plaintiffs' claim of fraud over the specific assets/issues?

5.      Is the evidence sufficient for a jury to consider plaintiffs' claims that defendants violated Section 20 or Section 10(b) of the Securities Act of 1934, or Rule 10b-5 thereunder?

6.      Is the evidence sufficient for a jury to consider plaintiffs' claims that defendants breached any fiduciary duty owed as to the specific assets/issues?

7.      Is the evidence sufficient for a jury to consider plaintiffs' claims of breach of

22

contractual warranties as to the specific assets/issues?

8.     Is there sufficient evidence for the jury to consider an award of punitive damages?

9.     What theories of damage are plaintiffs entitled to use in front of the jury?

10.    Does any state or common law other than the law of Kansas apply to the state law claims of any plaintiff?

11.    Are any or all of plaintiffs' claims that were added to this case by way of amendment barred by the statute of limitations and/or laches?

12.    Are plaintiffs' claims against individual defendants other than Charles Koch and Sterling Varner, barred by the statute of limitations and/or laches?

13.    Have plaintiffs, who are assignees from "selling shareholders" (as of June 4, 1983), established that the tort claims and/or security law claims they purport to maintain were assignable as a matter of law and that they have standing to maintain such claims?

14.    Is any plaintiff herein barred from recovery on or lack standing to maintain a claim of damage attributable to shares of KII stock that were not legally titled to such shareholder as of June 4, 1983, and/or were transferred to other entities or persons by such shareholder after June 4, 1983?

23

## 9.    DISCOVERY

Plaintiffs' Statement:  Discovery is complete, except for the videotaping and photographing of the Pine Bend Refinery, which plaintiffs and defendants agreed would be conducted after the August 13, 1993 cut off date.

Plaintiffs have proposed to defendants that the parties, at a later time, take depositions of any person named on a party's final trial witness list who has not been previously deposed in this case. This procedure will avoid surprise at trial.  The parties will inform the Court if they reach agreement or if a ruling by the Court will be needed on this matter.

Plaintiffs may be entitled during trial to obtain evidence of defendants' financial worth under the conditions stated in the Court's order of August 24, 1992.

Defendants' Statement:  Defendants agree with plaintiffs' statements regarding discovery, except with regard to the second paragraph thereof.  Counsel for defendants have clearly, unequivocally, and repeatedly advised counsel for plaintiffs that they are not entitled to take any further discovery depositions of any witnesses previously disclosed and that any such request would be vigorously opposed.

## 10.    WITNESSES AND EXHIBITS

Counsel are attaching and filing lists of witnesses as exhibits to this Pretrial Order.  Plaintiffs' witness list is attached as Exhibit A.  Defendants' list is attached as Exhibit B.

Counsel will list and exchange proposed exhibits at a later time to be agreed (as discussed with the Court at the status conference on July 30, 1993).  Plaintiffs' exhibit list will later be attached

24

to this Pretrial Order as Exhibit C. Defendants' exhibit list will later be attached as Exhibit D.

Witnesses and exhibits listed by one party may be called or offered by the other party. Witnesses and exhibits not identified and exchanged as agreed or as required by this Order shall not be permitted to testify or be received in evidence, respectively. The Clerk shall not issue any subpoena duces tecum for exhibits not marked in compliance with this Order and the Civil Procedural Guidelines. Compliance with the provisions of this section of the Pretrial Order shall be required in all cases except by agreement of counsel or upon order of the Court, or in proper rebuttal.

## 11.    **MOTIONS**

There are no pending motions.

25

The parties intend to file motion(s) *in limine* and/or for determination of issues of law in advance of trial.

## 12.  OTHER

Plaintiffs' Statement:

Unless otherwise ordered, the parties will fully comply with the Civil Procedural Guidelines.

Defendants' Statement:

In view of the twelve plus year history of this case, and its special handling by Judge Crow per prior orders, this case should be exempt from the usual Civil Procedure Guidelines applicable in this Court.

## 13.  TRIAL

Plaintiffs' Statement:  Trial will be by jury.

Defendants' Further Statement: Organization of Counsel. In accordance with the Manual for Complex Litigation, 2d Edition, defendant believe that the Court should find that the multiple party plaintiffs have similar positions in this litigation. Defendants believe that the Court should also find the multiple party defendants have similar positions in this case. Each side shall therefore designate an attorney with principal responsibility for the conduct of each phase of trial, including the designation of attorneys to take the major role in presenting opening statements, in examining particular witnesses, in making and responding to motions and objections, and in presenting arguments to the court.  Other counsel shall be permitted to supplement opening statements highlighting any special, non-cumulative points relevant to any claim or defense of a particular party

26

and to conduct additional non-cumulative examination of witnesses relevant to the claim or defense of that party, if it be demonstrated to the satisfaction of the Court that the position of such particular party is materially different from the position of other parties on that side of the case. An objection, motion, or offer of proof by one party shall be deemed made on behalf of all similarly situated parties who do not disclaim it; such parties may, however, make known any additional grounds or circumstances pertinent to the admissibility of the evidence with respect to them. (MCL 2d § 41.7)

Plaintiffs' Response: Plaintiffs believe it is premature to make specific rulings on parties' organization of their trial presentations.

## 14.   TIME AND PLACE OF TRIAL

Trial will be in Topeka, Kansas. Trial will be to a jury, and trial will begin at 1:30 p.m. on April 6, 1998.

## 15.   TRIAL TIME AND SETTLEMENT PROSPECTS

Plaintiffs' Statement:

a.    Estimated trial time is 4 weeks.

b.    Settlement prospects are poor.

Defendants' Statement:

a.    Estimated trial time is 4-6 weeks.

27

b.      Settlement prospects have previously been explored.  Defendants will participate in good faith in ADR by mediation as ordered by the Court, under guidelines to be agreed upon by counsel for the parties.

IT IS SO ORDERED, and this Pretrial Order to the extent it conflicts shall supersede pleadings and control the future course of the action unless modified to prevent injustice.

Dated at Topeka, Kansas, this _____ day of _____, 199___.


_____
Honorable Sam A. Crow
UNITED STATES DISTRICT JUDGE

28



COURT'S PROPOSED FINAL PRETRIAL ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM I. KOCH, et al.,           )
                                   )
            Plaintiffs,            )
                                   )
vs.                                )    Civil Action No. 85-1636-C
                                   )
KOCH INDUSTRIES, INC., et al.,     )
                                   )
            Defendants.            )

## **PRETRIAL ORDER**

A pretrial status conference was held in the above case on the 25th day of August, 1997.

### 1.   **APPEARANCES**

Counsel present and participating were:

**For the plaintiffs:**

Fred H. Bartlit, Jr.
Bartlit Beck Herman Palenchar & Scott
54 West Hubbard Street
Suite 300
Chicago, Illinois  60610
(312) 494-4400

Donald E. Scott
Bartlit Beck Herman Palenchar & Scott
511-16th Street, Suite 700
Denver, Colorado  80202
(303) 592-3100

Attorneys for Plaintiffs
William I. Koch, Oxbow Energy,
Inc., Spring Creek Art
Foundation, and Northern Trust
Company

Russell E. Brooks
Eugene F. Farabaugh
MILBANK, TWEED, HADLEY &
McCLOY
1 Chase Manhattan Plaza
New York, New York  10005
(212) 530-5000

Attorneys for Plaintiffs
Frederick R. Koch and The
Fiduciary Trust Company International



Gregory S.C. Huffman
THOMPSON & KNIGHT
A Professional Corporation
3300 First City Center
1700 Pacific Avenue
Dallas, Texas 75201
(214) 969-1700

    Attorneys for Plaintiffs .
    L.B. Simmons Energy, Inc.
    d/b/a Rocket Oil Company, Gay
    A. Roane Ann Alspaugh, Paul
    A.A. Cox, Holly A.A. C. Farabee,
    And Ronald W. Borders

Michael Paul Kirschner
LEE & KIRSCHNER, PLLC
3300 Liberty Tower, 100 North Broadway
Oklahoma City, Oklahoma 73102-8805
(405) 239-3300

Stephen M. Joseph
Redmond & Nazar, LLP
900 Garvey Building
200 West Douglas
Wichita, KS 67202-3089
(316) 262-8361

Attorneys for Plaintiffs
Louis Howard Andres Cox and Nations Bank,
N.A., as trustees for the Louis Howard Andres
Cox Trusts B and D

Clifford L. Malone
ADAMS, JONES, ROBINSON &
MALONE, CHARTERED
155 North Market, Suite 600
Post Office Box 1034
Wichita, Kansas 67201-1034
(316) 265-8591

Harry L. Najim
NAJIM LAW OFFICES
300 West Douglas, Suite 960
Wichita, Kansas 67202
(316) 269-0960

Attorneys For All Plaintiffs
Except Louis Howard Andres Cox

**For the Defendants:**

Robert L. Howard
James M. Armstrong
FOULSTON & SIEFKIN
700 NationsBank Financial Center
100 North Broadway
Wichita, Kansas   67202
(316) 267-6371

Attorneys for All Defendants

Donald L. Cordes
4111 East 37th Street North
Wichita, Kansas   67220
(316) 832-5500

Attorney for Defendants
Donald L. Cordes and Koch
Industries, Inc.

## 2.   VENUE; JURISDICTION OF PARTIES AND SUBJECT MATTER; PROPRIETY OF PARTIES

A.      The Court's jurisdiction is based on the Securities Exchange Act of 1934 (15 U.S.C.

§ 78aa), federal question jurisdiction (28 U.S.C. § 1331), and diversity of citizenship between the

parties (28 U.S.C. § 1332(a)).  The Court has jurisdiction of the non-federal causes of action pursuant

to the principles of supplemental and pendent jurisdiction (28 U.S.C. § 1367).

B.      Venue is proper in this district pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

C.      Defendants stipulate and agree that jurisdiction of parties and subject matter, as well

as venue, is proper in this Court.

~~b.        Defendants' statement as to propriety of parties. Defendants do not stipulate or agree~~

~~that Oxbow Energy, Inc., The Spring Creek Art Foundation, and Northern Trust Company,~~

~~purporting to be successors in interest to W.I. Koch or prior entities, or any other persons or entities~~

~~who were not selling shareholders on June 10, 1983, are proper parties plaintiff or that any such~~

~~entities have standing to bring all or part of the claims asserted herein. Various plaintiffs herein~~

~~purport to be assignees of tort claims, and all such plaintiffs should be required to prove that any~~

3

~~such claims they purport to hold were clearly assignable under the law applicable to plaintiffs' theories of recovery.~~ [In their memorandum on questions of law, the defendants recently withdrew from their issues of law those questions on assignability and standing found at questions thirteen and fourteen. (Dk. 645, p. 1, n.1). Because the defendants said those questions had been resolved and had simply overlooked deleting them from the proposed pretrial order, the court assumes the same is true with respect to the above paragraph.]

## 3.   **NATURE OF THE CASE**

~~Plaintiffs' Statement:~~   This is a suit for damages by former shareholders of Koch industries, Inc. ("KII") against that privately-held company and certain individuals who were directors and officers of KII. Plaintiffs allege that they sold their KII stock to KII in June 1983 for less than its fair value. Plaintiffs allege that the defendants misrepresented the financial condition of KII and misrepresented and/or failed to disclose information materially affecting the value of KII stock, ~~so as to induce plaintiffs' sale of KII stock at a low price. The case arises under the Securities Exchange Act of 1934 and under state law of contract, fiduciary duty, and fraud.~~ Asserting actions under federal securities law and under the state law of contract, fiduciary duty and fraud, the plaintiffs claim that the defendants misrepresented information and withheld other information concerning Pine Bend Refinery and the accounting treatment of certain losses. The defendants deny that they made any statement or failed to make any statement concerning Pine Bend Refinery or the accounting treatment of certain losses that amounts to a breach or violation of federal or state law.

~~Defendants' Statement and Objection:~~

        ~~a.~~   ~~Defendants object to plaintiffs' proposed statement for the reason that it does~~

not correctly reflect the limited nature of this case due to the Court's prior rulings granting summary judgment in favor of defendants on various claims and allowing plaintiffs to make only limited amendments to their complaint.

      b.      Defendants believe the following statement correctly reflects the nature of this case.

          1.      In 1982, William Koch and other shareholders of Koch Industries (KII) filed an action against that privately-held company and certain individuals who were directors and officers, claiming breach of fiduciary duties and fraud. Plaintiffs decided to sell all of their stock in the company after considering detailed evaluations of KII by major investment banking firms, and executed a Stock Purchase and Sale Agreement dated June 4, 1983. Pursuant to the agreement, Koch Industries purchased all of its stock owned by the plaintiffs (approximately 48 percent of the outstanding stock) at an agreed price in excess of One Billion Dollars and, in exchange, the plaintiffs executed general releases of all claims against defendants and dismissed their lawsuit with prejudice.

          2.      On June 7, 1985, William I. Koch, Oxbow Energy, Inc., Rocket Oil Company, United States Trust company of New York, as Trustee, and other former shareholders in Koch Industries filed a class action against Koch Industries, Charles Koch, and Sterling Varner. Plaintiffs alleged they were induced to sell their ownership of approximately 48% of the issued and outstanding capital stock in Koch Industries due

5

to defendants' misrepresentation or concealment of the true value of the stock. Plaintiffs' claims included: breach of warranty, breach of fiduciary duty, securities fraud, and Common-law fraud.

3.     On November 5, 1986, this court entered an order granting in part defendants' motion to dismiss and alternative motion for summary judgment.  On November 4, 1988, plaintiffs moved to amend their complaint to add David Koch, Tom Carey and Donald Cordes as defendants, and the Court thereafter allowed limited amendments to plaintiffs' claims.  On July 11, 1997, The Court entered an Order granting summary judgment in favor of defendants on 9 out of 12 of plaintiffs' claims.  Plaintiffs' claims are therefore now limited to the following specific assets or issues and to the alleged diminishment of the value of their stock as of June 4, 1983, as a direct result thereof:

(a)     The actual or planned capacity expansion at the Pine Bend Refinery;

(b)     The accounting treatment of certain losses and gains for fiscal year ended December 31, 1982.

Plaintiffs' Objections.  Unlike plaintiffs' non-argumentative statement of the nature of the case, defendants' statement is not appropriate for use with the jury.  Defendants' statement is a procedural summary rather than a statement of the nature of the case.  It is argumentative in its phrasing and its selection of material for emphasis.  Finally, it unduly limits the issues in this case in a manner contrary to the amended complaint and without support in rulings by the Court. [The above statement is a brief and accurate description of the nature of the case as it now stands.  The court sees no need to give a procedural summary of this case.]

## 4.0 PLAINTIFFS' FACTUAL CONTENTIONS AND LEGAL THEORIES

### A. Factual Contentions

Plaintiffs make the following contentions as to the claims remaining, expressly reserving for

appeal the claims previously dismissed by the Court, including but not limited to those dismissed by

summary judgment in the Court's ruling dated July 11, 1997.

The Stock Purchase and Sale Agreement contained warranties by KII. One warranty (§5 (c))

provided that the audited financials of KII as of December 31, 1981 and December 31, 1982:

> fairly present the consolidated financial condition and consolidated results of
> operations of the Buyer [KII] and its subsidiaries as at such dates and for such
> respective periods in accordance with generally accepted accounting principles
> consistently applied throughout the periods covered thereby. The unaudited
> consolidated financial statements of [KII] and its subsidiaries for the four months
> ended April 30, 1983 and as of April 30, 1983 . . . fairly present the consolidated
> financial condition and consolidated results of operations of [KII] and its subsidiaries
> as of April 30, 1983 and for the four month period then ended ....

A second warranty (5(d)) provided that since December 31, 1982:

> there has been no material change in the assets, properties, business, operations or
> condition (financial or otherwise) of [KII] and its subsidiaries taken as a whole. There
> is no event, condition or state of facts in existence on the date hereof which is known
> by [KII] or any of its officers and has not been disclosed by [KII] to the Principal
> Sellers and is not otherwise actually known by the Principal Sellers which if fully
> disclosed might materially affect the valuation of the stock of [KII] by a prudent and
> knowledgeable investor, excluding events, conditions and states of fact which have
> an effect on the oil industry in general. Without limiting the generality of the
> foregoing, neither Buyer nor any of its officers is aware of any material undisclosed
> discoveries of oil or gas related to any property of Buyer, there are no outstanding
> undisclosed offers or agreements to purchase all or any substantial part of the assets
> of Buyer and there are no undisclosed outstanding negotiations looking to any
> acquisition of Buyer or its shares or to any merger or consolidation involving Buyer
> or any of its material subsidiaries or any existing undisclosed agreements or
> agreements in principle relating to the acquisition by Buyer of stock or assets having

7

a cost of value in excess of $30,000,000 . . . .

The representations and warranties by KII expressly survived the closing and any investigation made by or on behalf of the parties at any time (§18).

As part of the Stock Purchase and Sale Agreement defendants David Koch and Charles Koch each expressly represented and agreed above his signature that he was "aware of the provisions of [the Agreement] and confirm[ed] that the representations of [Koch Industries] under section 5 of the Agreement are true and correct to the best of the knowledge of such undersigned." (Exh. E)

Plaintiffs contend that defendants materially misrepresented facts, and omitted material facts, concerning the financial statements of KII (as of 12/31/81; 12/31/82; and the four months ended 4/30/83) and concerning the assets, properties, operations, condition, earnings and prospects of KII affecting the value of KII's stock as of June 10, 1983 (the closing date of the stock sale -- see §7(e) of Stock Purchase and Sale Agreement). These Defendants' misrepresentations and omissions, which Plaintiffs discovered subsequent to the June 1983 stock sale, related to the following.

### 1. Pine Bend Refinery

As of the date of the stock sale, defendants knew but did inform the selling shareholders that KII already was increasing, and making plans for further increasing, the crude processing capacity of the Pine Bend Refinery to approximately 145,000 B/D by June 1983; and to approximately 155,000 B/D by the end of 1983.

At the March 1983 KII shareholders and board of directors meetings, defendants made numerous false and misleading statements to the plaintiffs or their representatives regarding the dismal prospects for KII's refining business during 1983 and in the future. These statements included, among

8

others, are the defendants' assertions that it "would require a substantial recovery in refining margins" for KII to make its 1983 profit plan; that KII's "cash cows are sick"; that prices would fall even further and "could result in some heavy losses" on inventories; and that "the market is starting to fall greatly so that [KII's] assets are deteriorating considerably", and similar gloomy and pessimistic statements. [As of the pretrial order, the defendants are entitled to know the substance of all alleged material misrepresentations and omissions. The court has deleted certain language which it considers to be open-ended allegations that do not afford fair notice.]

Contrary to these statements, defendants hid from the selling shareholders their actions and plans to increase the capacity of the Pine Bend Refinery, to maintain or increase refining margins while simultaneously increasing volumes --despite the industry's downward trend -- and to gain access to greater volumes of low-priced Canadian crudes. Defendants' plans included delivering and selling the increased Pine Bend output into existing and new market territories to be accessed more effectively by the reversal of the direction of flow of the Williams Pipeline and by other means. Defendants expected that the Refinery's undisclosed plans for large capacity increases would be highly profitable. Defendants failed to disclose these plans at the March 1983 meetings or prior to the June 1983 stock sale. Defendants did not disclose their true capital budget for expanding the crude capacity of the Refinery in 1983 and later years. Defendants did not disclose how their plans would increase the value of the Refinery.

## 2.    Accounting Issue

KII employed accounting methods that were designed intentionally to understate KII's earnings and assets in the financial statements. Most importantly, KII knew that the selling

9

shareholders and their advisors would consider the apparent trend ▓ KII's earnings as a basis for estimating the value of KII shares and KII's ability to finance the buy-out price. ~~KII therefore took steps to diminish its apparent earnings.~~

~~The following accounting practice by KII violated GAAP and constituted breaches of both warranties in the Stock Purchase and Sale Agreement (quoted above): KII failed to disclose its unusual and/or infrequently occurring losses. KII categorized these losses as recurring expenses or depreciation, thereby artificially reducing what appeared to be KII's ordinarily recurring income.~~ To diminish its apparent earnings, KII therefore employed the following accounting practice which violated GAAP and constituted breaches of both warranties in the Stock Purchase and Sale Agreement (quoted above): KII failed to disclose its unusual and/or infrequently occurring losses. KII categorized these losses as recurring expenses or depreciation, thereby artificially reducing what appeared to be KII's ordinarily recurring income. [These changes clarify that the plaintiffs' accounting claim concerns only unusual and/or infrequently occurring losses.]

## B.    Legal Theories for Recovery

Plaintiffs assert the following legal theories for recovery as to the Pine Bend Refinery: (1) breach of contract and warranty; (2) breach of fiduciary duty; (3) fraud under the common or state law; (4) securities fraud under $ 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. $ 78j (b) (1982), and SEC Rule l0b-5; (5) liability as controlling persons of other violators, pursuant to Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. $ 78t; and (6) derivative liability as controlling persons or otherwise under the common or state law.

Within the restrictions placed by the Court's Memorandum and Order dated June 30, 1992,

10

plaintiffs assert the following legal theories for recovery as to the accounting issue of unusual/infrequent losses: (1) breach of contract and warranty; and (2) breach of fiduciary duty.

### C.    ~~Itemization of Damages~~

~~[This section (C)(1) and (C)(2) has not yet been revised, but will be revised upon plaintiffs'~~
~~receipt of a modified damages report from Patricof & Co.]~~

#### 1.    ~~Compensatory Damages as of June 1983~~

~~Plaintiffs contend that the appropriate measure of damages is either (1) the difference between the price actually paid for their stock and the fair market value of KII stock sold on June 10, 1983, or (2) the incremental amount above $200/share (plus a share of the Santa Barbara offshore oil field) that the selling shareholders would have obtained in knowledgeable negotiations with KII for the sale of their stock, whichever is greater.  In the event that the Court allows inquiry into KII's post-1985 financial condition, plaintiffs reserve the right to claim the benefit KII derived from fraudulently inducing the selling shareholders to sell.~~

~~The fair market value of KII's hidden or misstated assets and earnings at June 1983 was at least $83 per share (i.e. incremental value above the sale price).  The derivation of this number is detailed in Patricof & Co.'s "Updated Report on Damages" (Nov. 4, 1992).  Patricof & Co utilized the reports of plaintiffs' other experts regarding particular assets, operations, and accounting practices to determine the amount of the understatements and omissions; deducted taxes; and weighted the understatements of assets and earnings, respectively, as the market would treat them in valuing KII stock.  Patricof & Co. thus derived a fair market value of the misrepresented and/or undisclosed values equaling $58 per share, to which Patricof added a premium of 35-50%.  The $83/share figure~~

11

stated above utilizes the $58/share plus the middle of Patricof's premium range.

### 2.    Compensatory Damages for Time Value of Money

Plaintiffs seek compensatory damages for the deprivation of the use of their money from June 10, 1983 until judgment, a period during which KII unjustly used plaintiffs' money. Depending on the Court's instructions of law, plaintiffs will seek compensation for their lost time value of money either at a statutory rate of prejudgment interest (the Kansas statutory rate of 10% or otherwise), or by the yield of an equally-balanced portfolio of common stocks, corporate bonds, and Treasury bills performing over the same time period. Patricof & Co. has calculated the latter: a total value of $2,725 as of November 1992 for each $1,000 of value in June 1983. Patricof's number will be updated to the time of trial.

Plaintiffs reserve the right to introduce evidence of KII's or plaintiffs' actual earnings on investment capital over the period in question, in the event that defendants were to contend, or the Court were to rule, that the foregoing methods of measurement are not sufficient without proof of actual investment experience.

### 3.    Punitive Damages

Plaintiffs will seek punitive damages under their nonfederal claims, in accordance with the Court's instructions of applicable law.

### C.    Itemization of Damages

### 1.    Compensatory Damages as of June 1983

Plaintiffs contend that the appropriate measure of damages is either (1) the difference between the price actually paid for their stock and the fair market value of KII stock sold on June 10, 1983,

12

or (2) the incremental amount above $200/share (plus a share of the Santa Barbara offshore oil field) that the selling shareholders would have obtained in knowledgeable negotiations with KII for the sale of their stock, whichever is greater. In the event that the Court allows inquiry into KII's post 1985 financial condition, plaintiffs reserve the right to claim the benefit KII derived from fraudulently inducing the selling shareholders to sell.

(a) The fair market value of KII stock sold in June 1983 includes (in addition to the $200/share purchase price plus the Santa Barbara interest) the value of KII's hidden or misstated earnings and the undervaluation of KII's disclosed earnings resulting from defendants' misrepresentations and omissions related to the company's condition, performance and prospects.

The fair market value of KII's hidden or misstated earnings at June 1983 was at least $73.10 to $78.60 per share (*i.e.,* incremental value above the purchase price). The derivation of this number is detailed in Patricof & Co.'s "Revised Report on Damages" (Nov. 17, 1997).

KII's disclosed earnings were undervalued by plaintiffs because of defendants' misrepresentations and omissions about the condition, performance and prospects of the company, such as the statements made by defendants at the March 5, 1983 Board of Directors and shareholder meetings. The calculation of additional damages necessary to give plaintiffs the fair market value of the disclosed earnings is that shown on pages 5-6 of Patricof's Revised Report (Nov. 17, 1997).

(b) The incremental amount above $200 per share (plus a share of the Santa Barbara offshore oil field) that plaintiffs would have obtained in knowledgeable negotiations with KII for sale of their stock was at least $120 per share. Defendants' misstatements and omissions induced plaintiffs to underestimate KII's cash flow and its ability to borrow and repay debt for purchasing plaintiffs'

13

stock.

## 2. Compensatory Damages for Time Value of Money

Plaintiffs seek compensatory damages for the deprivation of the use of their money from June 10, 1983 until judgment, a period during which KII unjustly used plaintiffs' money. Depending on the Court's rulings or instructions of law, plaintiffs will seek compensation for their lost time value of money at a statutory rate of prejudgment interest (the Kansas statutory rate of 10% or otherwise), or by the yield of an equally-balanced portfolio of common stocks, corporate bonds, and Treasury bills performing over the same time period. Patricof & Co. has calculated the latter: a total value of $5,401 as of October 31, 1997 for each $1,000 of value in June 1983. Patricof's number will be updated to the time of trial.

Plaintiffs reserve the right to introduce evidence of KII's or plaintiffs' actual earnings on investment capital over the period in question, in the event that defendants were to contend, or the Court were to rule, that the foregoing methods of measurement are not sufficient without proof of actual investment experience.

## 3. Punitive Damages

Plaintiffs will seek punitive damages on those claims for which punitive damages are legally recoverable, in accordance with the Court's instructions of applicable law.

[The court has substituted the plaintiffs' revised itemization of damages that is based upon the recent damages report received from Patricof & Co.]

## 4.1 DEFENDANTS' FACTUAL CONTENTIONS AND LEGAL THEORIES

14

## A. Defendants' Factual Contentions

The controlling facts, highly summarized, are:

1. Neither Koch Industries, Inc. nor any of the individual defendants committed any act or made any statement, or failed to make any statement, which constitutes a breach of any warranty in the Stock Purchase and Sale Agreement, a breach of any fiduciary duty, a violation of the federal securities laws, or an act or omission amounting to common law fraud. Defendants fully responded to all requests for information from plaintiffs and their numerous financial advisors, and in addition they had access to other information relating to the Company's operations and financial results, all of which were sufficient for plaintiffs to form their own conclusions regarding the value of the Company's stock.

2. With regard to the plaintiffs' claims relating to specific assets/issues, the facts are:

(a) The Pine Bend Refinery Expansion. Plaintiffs were aware of the existing capacity of the refinery as of the date they sold their stock in June 1983, through the information available to them and to their advisors. Plaintiffs and their advisors were further aware, through extensive information furnished to them over a period of years, including but not limited to capital expenditures approved by the Board of Directors, that the Company was in the process of expanding the refinery and that it would have additional capacity in the future months after June 1983.

(b) Accounting Claim. Defendants deny that any of the allegations raised by

15

plaintiffs with regard to the Company's financial statements constitute a violation of generally accepted accounting principles, and further deny the plaintiffs' allegations that the Company's financial statements did not fairly present the consolidated financial condition and consolidated results of operations of the Company and its subsidiaries. Specifically, defendants deny that the Company's financial statements failed to disclose unusual or infrequently occurring losses. The losses asserted by plaintiffs in this part of their claim were neither unusual nor infrequently occurring in terms of the Company's business operations, within the meaning of generally accepted accounting principles.

## B.   Defendants' Legal Theories

1.   Plaintiffs cannot establish all of the elements necessary for recovery on their theories of breach of warranty, breach of fiduciary duty, violation of the federal securities laws, or common law fraud.

2.   Plaintiffs have no clear and convincing evidence of any alleged fraud.

3.   Plaintiffs are limited to claims of breach of contract and/or warranty as a matter of law by reason of the express terms of the Stock Purchase and Sale Agreement, and their general releases and dismissal with prejudice of the 1982 litigation. Defendants justifiably relied on these agreements and the adjudication by dismissal with prejudice, and plaintiffs are estopped to deny the validity thereof.

16

4.    In 1982 and 1983, plaintiffs were suing defendants, were represented by their own attorneys, investment bankers, and other advisors, and the duties owed by individual defendants, including their duties as officers or directors of KII, must be interpreted in light of the uncontroverted facts and circumstances existing as of 1982 and 1983. Such duties were not breached by defendants.

5.    Plaintiffs have represented by pleadings herein that, because of their distrust of the defendants, plaintiffs insisted upon the written contractual warranties contained in the Stock Purchase and Sale Agreement, and that but for said written warranties, plaintiffs would not have sold their stock in the Company. Likewise, defendants received plaintiffs' general releases and dismissal of their lawsuit in reliance on that same Stock Purchase and Sale Agreement and the warranties contained therein. Plaintiffs' pleadings constitute judicial admissions and plaintiffs are therefore barred from asserting claims for fraud, securities law violations, or breach of fiduciary duty.

6.    ~~Only those plaintiffs who actually owned stock in Koch Industries, Inc. at the time of the closing of the Stock Purchase and Sale Agreement on June 10, 1983, have any standing to sue herein, and/or are proper parties to this action, and any other plaintiffs lack standing to maintain claims in this action and/or are not the real party in interest, and/or are assignees of claims for relief that cannot be assigned as a matter of law.~~

7.    ~~To the extent a party plaintiff herein has sold or transferred stock, actually owned by such plaintiff on June 4, 1983, or has assigned claims or attempted to assign~~

17

claims pendant thereto, such plaintiff has lost any standing to sue for, or claim damages attributable to, any such share of stock, and any such claims are barred. [In their memorandum on questions of law, the defendants recently withdrew from their issues of law those questions on assignability and standing found at questions thirteen and fourteen. (Dk. 645, p. 1, n.1). Because the defendants said those questions had been resolved and had simply overlooked deleting them from the proposed pretrial order, the court assumes the same is true with respect to these legal theories.]

8.     The applicable statutes of limitation bar any and all claims raised herein by plaintiffs against all defendants, to the extent said claims were not raised in plaintiffs' original complaint and were added only by way of amendment. In addition, plaintiffs' claims herein against the individual defendants, other than Charles Koch and Sterling Varner, were not commenced within the applicable period of limitations and all such claims are therefore time barred.

## C.     Defendants' Statement On Plaintiffs' Alleged Damages

Plaintiffs will not be able to establish liability under any theory, and their alleged damages are therefore irrelevant. Further, the consideration paid plaintiffs was substantially in excess of the fair market value of their minority stock interest in KII and plaintiffs have suffered no damages for which they are entitled to be compensated. Defendants further object to plaintiffs' allegation that they are entitled to seek damages based on the growth of Koch Industries after 1983. Plaintiffs have never before pled such a theory of recovery and such contention is not supported by law. Defendants further object to plaintiffs' claim for prejudgment interest as no such allowance is supportable under

18

applicable law. [The court understands the plaintiffs to allege that damages based on KII's growth is basically alternative manner for calculating prejudgment interest. Since the plaintiffs have prayed for prejudgment interest in the third amended complaint, the court denies the defendants' objection.]

~~D.~~ ~~**Plaintiffs' Objections:**~~ ~~Plaintiffs object to defendants' "highly summarized"~~ ~~statement of "controlling facts" in so far as defendants have omitted any foreseeable area of factual~~ ~~proof they might intend to offer at trial. The purpose of this Pretrial Order is to fairly inform the~~ ~~parties and the Court of the intended areas of proof at trial, so everyone can properly prepare.~~ [The court overrules the plaintiffs' objection that the defendants' statement does not fairly inform the plaintiffs of the defendants' intended areas of proof at trial. Though not as detailed as it could be, the defendants' statement fairly discloses the factual position being taken on the plaintiffs' different claims.]

## 5. **STIPULATIONS**

The parties hereto stipulate and agree that:

A. The United States District Court for the District of Kansas has jurisdiction of the parties hereto and the subject matter hereof.

B. Venue is properly laid in this District.

C. All proper, necessary and indispensable parties are parties hereto; except that defendants do not thereby agree that such parties are real parties in interest or that they have standing to maintain non-contract law claims herein for the legal reasons stated elsewhere in this Order.

19

D.     Federal law governs Counts I and II of the Third Amended Complaint.

E.     Kansas law governs Counts III, IV and V of the Third Amended Complaint.

## 6.     AMENDMENTS TO PLEADINGS

~~Plaintiffs' Statement~~:   The issues in this case are those specified in plaintiffs' and defendants' respective statements of their factual contentions and legal theories.

~~Defendants' Statement~~:        ~~The pleadings are amended to conform to all orders of this Court and rulings reflected in this Pretrial Order.  [Plaintiffs do not understand, and hence object to, defendants' statement in the preceding sentence because of its generality and vagueness.]~~  [The court believes the plaintiffs' statement is factually correct and legally consistent with Fed. R. Evid. 16(e).]

## 7.     ISSUES OF FACT

~~Plaintiffs' Statement~~:   The following are the remaining ultimate and controlling issues of fact in dispute with respect to the Pine Bend Refinery and the accounting issue:   [The language is added to clarify that the issues of fact should not be read to exceed the scope of the claims remaining for trial.]

A.     Whether the defendants made false or misleading statements of material facts to plaintiffs or their representatives, or omitted to state material facts, as to the actual value of KII's assets, earnings, or operations, or the financial condition of the company, which were not known by the plaintiffs or their representatives.  [The added language addresses the defendants' concern raised in their proposed issue No. 3.]

20

B.     Whether there was a substantial likelihood that a reasonable shareholder would have considered the statements made and/or facts omitted to have been material to making a decision about selling important or significant, as part of the total mix of information considered, in deciding to sell KII stock in June 1983 or in agreeing to the sales price. [The added language defines the concept of materiality under Rule 10b-5.]

C.     Whether the statements and omissions made by defendants were made knowingly with the intent to deceive, manipulate or defraud or made with reckless disregard for the truth. [The added language emphasizes that the issue concerns intent.]

D.     Whether, with respect to the common or state law fraud claims, the statements and omissions made by Defendants were made knowingly with the intent to deceive, made with reckless disregard for the truth, negligently, or with the purpose of inducing a person to enter into a sale of stock.

E.     Whether defendants occupied positions of control, or exercised control, with respect to other persons employed by or acting agents of KII who communicated false and/or misleading and/or incomplete information to the plaintiffs.

F.     Whether the persons who communicated false and/or misleading and/or incomplete information to the plaintiffs were actual and/or apparent agents of the defendants.

G.     Whether defendants fully disclosed to the plaintiffs, prior to the closing of the stock purchase on June 10, 1983, all events, conditions and facts which then existed, which do not affect the oil industry in general, which were known by the defendants, which were not otherwise actually known by plaintiffs, and which might have materially affected their a prudent and knowledgeable

21

:investor's: valuation of KII stock. [The changes reflect the actual terms of the warranty found in the SPA.]

H.     Whether any material change in the assets, properties, business, operations or condition (financial or otherwise) of KII and its subsidiaries, taken as a whole, occurred between December 31, 1982 and the closing date of the stock purchase on June 10, 1983.

I.     Whether KII's consolidated balance sheets at December 31, 1981 and December 31, 1982, and the related statements of income, retained earnings and changes in financial position for the years ended, including the footnotes thereto, fairly presented the consolidated financial condition and results of operations of KII and its subsidiaries as of such dates in accordance with GAAP consistently applied throughout the periods covered.

J.     Whether KII's unaudited consolidated financial statements for the four months ended April 30, 1983 fairly presented the consolidated financial condition and results of operations of KII as of that date in accordance with GAAP consistently applied.

K.     Whether the facts that the defendants or misrepresented or failed fully to disclose :fully: to the plaintiffs would, if fully and accurately disclosed, have materially affected the valuation of the KII stock by a prudent and knowledgeable investor.

L.     Whether plaintiffs or their representatives relied upon the defendants' misrepresentations and/or omissions of fact :which were material to the specific assets/issues and: thereby suffered :actual: damages which were proximately caused by the defendants' wrongful acts. [The added language addresses the defendants' concerns raised in their proposed issue No. 6.]

M.     Whether the individual defendants breached their fiduciary duty to the plaintiffs with

22

regard to their misrepresentations, omissions and incomplete and misleading disclosures.

N. Whether the plaintiffs are entitled to set aside the releases executed in June 1983 on the basis of fraud. [The court includes the defendants' proposed issue No. 7.]

O. Whether, and in what amount, the plaintiffs have suffered actual damages proximately caused by the defendants' violations and breaches of duty.

P. Whether, and in what amount, the plaintiffs have suffered damages from the lost use of money from June 1983 to the date of judgment. [Prejudgment interest is a matter for the court to decide.]

P. Whether, and in what amount, the plaintiffs should be awarded punitive damages.

Q. Whether, and in what amount, the plaintiffs should be awarded their attorneys' fees and other costs and expenses of litigation. [Fees and costs are a matter for the court to decide.]

Defendants' Statement: Defendants believe the controlling and ultimate issues of fact are:

1. With respect to the accounting claim raised by plaintiffs, did the Company's financial statements fairly present the consolidated financial condition and consolidated results of operations of the Company and its subsidiaries in accordance with generally accepted accounting principles?

2. What, if any, statements made in connection with the specific issues/assets were materially false or misleading to plaintiffs and their expert advisors?

3. What, if any, facts material to valuation of the specific assets/issues, which were known to defendants but not known to plaintiffs and their expert advisors, did defendants fail to disclose?

4. Excluding those events, conditions, and facts which have an effect on the oil industry

23

in general, was there any event, condition or state of facts in existence on June 4, 1983, material to the specific assets/issues, known by defendants and not known by plaintiffs, which was not disclosed and which if fully disclosed would have affected the valuation of the stock by a prudent and knowledgeable investor?

5. Were there any changes which occurred between December 31, 1982 and June 10, 1983, regarding the specific assets/issues, which were material to the business, operations or conditions (financial or otherwise) of KII and its subsidiaries, taken as a whole, which were known by defendants and not reasonably known to plaintiffs?

6. Did plaintiffs or their representatives actually rely on any alleged misrepresentation or omission of fact, material to the specific assets/issues, which proximately caused them actual damage in light of the total consideration paid for their stock?

7. Was any duty owed to plaintiffs by defendants actually breached under the circumstances of the 1983 transaction?

8. Are plaintiffs entitled to set aside for fraud the releases executed in June 1983?

9. What, if any, actual damages have plaintiffs suffered which were proximately caused by any breach of duty owed by defendants with regard to the specific assets/issues, in light of the total consideration actually paid for their stock?

10. Were any statements or omissions material to the specific assets/issues knowingly made or omitted by defendants with reckless disregard for the truth of such statements or omissions, for the purpose of inducing plaintiffs to sell their stock?

11. Have the plaintiffs established all elements prerequisite to any consideration of whether

24

plaintiffs can obtain an award of punitive damages?

[The court believes the essential points in the defendants' proposed issues of fact have been covered.]

## 8.   ISSUES OF LAW

Plaintiffs' Statement:   (As noted at p. ___ below, defendants generally agree with the statement of issues in lettered paragraphs A-K, subject to their separate statement at p. ___.)

A.   The following are the ultimate issues of law in the case:

1.   Whether the defendants are entitled to judgment as a matter of law on any or all of the plaintiffs' claims, as more specifically stated in some of the following issues.

2.   Whether there is sufficient evidence for the jury to find that the defendants have violated Section 10(b) of the Securities Exchange Act of 1934 and Rule l0b-5 thereunder, in connection with the purchase of plaintiffs' KII stock pursuant the Stock Purchase and Sale Agreement dated June 4, 1983.

3.   Whether there is sufficient evidence for the jury to find that the defendants caused persons who were employed by or were agents of KII, and who were controlled by them, to violate the Securities Exchange Act of 1934 and Rule l0b-5, such that the individual defendants have violated Section 20 of the Securities Exchange Act of 1934.

4.   Whether there is sufficient evidence for the jury to find that the defendants procured the plaintiffs' sale of KII stock in June 1983 and the execution of releases

25

by plaintiffs by means of fraud.

5.    Whether there is sufficient evidence for the jury to find that the individual defendants breached their fiduciary duty to the plaintiffs.

6.    Whether there is sufficient evidence for the jury to find that the defendants breached the Stock Purchase and Sale Agreement dated June 4, 1983, and breached the contractual warranties contained therein.

7.    Whether there is sufficient evidence for the jury to find that the plaintiffs have suffered damages proximately caused by the defendants' violations and breaches.

8.    Whether the plaintiffs shall be entitled to consequential damages and/or prejudgment interest. Whether, and in what amount, the plaintiffs have suffered damages from the lost use of money from June 1983 to the date of judgment. [This issue appears in the parties' proposed pretrial order as ¶ O of the plaintiffs' mixed issues of law and fact.]

9.    Whether the plaintiffs shall be entitled to the appreciation in the hands of defendants of the value of the assets wrongfully obtained from plaintiffs.

9.    Whether there is sufficient evidence for the jury to find that the plaintiffs are entitled to an award of punitive damages.

10.    Whether there is sufficient evidence for the jury to find that the releases executed by plaintiffs are to be set aside for fraud.

Plaintiffs state that the foregoing issues are mixed questions of fact and law which, therefore, are appropriate for determination by the jury under instructions of law from the Court. Plaintiffs are

26

presently aware of no other issues of law that may require ruling by the Court, except the following:

        11..    Whether the law of Texas, Oklahoma, and Mississippi govern the state and common law fraud claims of plaintiffs L.B. Simmons Energy, Inc. d/b/a Rocket Oil Company, Gay A. Roane, Ann Alspaugh, Louis Howard Andres Cox, Paul Anthony Andres Cox, Holly Andres Cox Farabee, and Ronald W. Borders, under Count VI of the Third Amended Complaint.

Defendants' Statement:

A.    Defendants agree that the ten issues of law stated by plaintiffs generally characterize the "ultimate issues of law in the case," but do not agree with the statement on [Plaintiffs' Draft] p. ___ [between lettered paragraphs J and K above] that such issues "are appropriate for determination by the jury."

B.    The following are the issues of law to be decided at or before the close of evidence:

        12.    Whether Are plaintiffs' legal theories and claims concerning the warranties contained in the 1983 Stock Purchase Agreement are inconsistent with the plaintiffs' other theories and claims and whether the plaintiffs' dismissal of their 1982 lawsuit and execution of releases preclude the plaintiffs from pursuing the other, and a judicial admission which is preclusive of, plaintiffs' theories of breach of fiduciary duty, violation of securities law, or fraud with regard to the specific assets/issues.

        2.    Does plaintiffs' dismissal of their 1982 lawsuit "with prejudice" and execution of releases preclude plaintiffs from any and all claims for breach of fiduciary duty or corporate or individual duty that were claimed or could have been claimed as of June

27

~~10, 1983?~~ [Since the defendants recently briefed these first two issues together, the court now combines them for purposes of the pretrial order.]

13.    ~~Do~~ Whether the doctrines of waiver, estoppel and laches preclude plaintiffs from setting aside for fraud the releases they executed in June 1983.

~~4.    Is there sufficient clear and convincing evidence for the jury to consider plaintiffs' claim of fraud over the specific assets/issues?~~

~~5.    Is the evidence sufficient for a jury to consider plaintiffs' claims that defendants violated Section 20 or Section 10(b) of the Securities Act of 1934, or Rule 10b-5 thereunder?~~

~~6.    Is the evidence sufficient for a jury to consider plaintiffs' claims that defendants breached any fiduciary duty owed as to the specific assets/issues?~~

~~7.    Is the evidence sufficient for a jury to consider plaintiffs' claims of breach of contractual warranties as to the specific assets/issues?~~

~~8.    Is there sufficient evidence for the jury to consider an award of punitive damages?~~

14.    What theories of damage are plaintiffs entitled to use in front of the jury?

~~9.    Does any state or common law other than the law of Kansas apply to the state law claims of any plaintiff?~~

15.    ~~Are~~ Whether any or all of plaintiffs' claims that were added to this case by way of amendment ~~are~~ barred by the statute of limitations and/or laches.

16.    ~~Are~~ Whether any of the plaintiffs' claims against individual defendants other

28

than Charles Koch and Sterling Varner, are barred by the statute of limitations and/or laches.

13.    Have plaintiffs, who are assignees from "selling shareholders" (as of June 4, 1983), established that the tort claims and/or security law claims they purport to maintain were assignable as a matter of law and that they have standing to maintain such claims?

14.    Is any plaintiff herein barred from recovery on or lack standing to maintain a claim of damage attributable to shares of KII stock that were not legally titled to such shareholder as of June 4, 1983, and/or were transferred to other entities or persons by such shareholder after June 4, 1983? [The defendants withdrew these issues in their recent brief. (Dk. 645, p. 1, n.1).]

17.    Whether, and in what amount, the plaintiffs should be awarded their attorneys' fees and other costs and expenses of litigation. [This issue appears in the parties' proposed pretrial order as ¶ P of the plaintiffs' mixed issues of law and fact.]

## 9.    DISCOVERY

Plaintiffs' Statement:    Discovery is complete, except for the videotaping and photographing of the Pine Bend Refinery, which plaintiffs and defendants agreed would be conducted after the August 13, 1993 cut off date.

Plaintiffs have proposed to defendants that the parties, at a later time, take depositions of any person named on a party's final trial witness list who has not been previously deposed in this case.

29

~~This procedure will avoid surprise at trial.~~ ~~The parties will inform the Court if they reach agreement~~ ~~or if a ruling by the Court will be needed on this matter.~~ [The court believes both sides have been afforded ample time to complete all necessary discovery in this case.]

Plaintiffs may be entitled during trial to obtain evidence of defendants' financial worth under the conditions stated in the Court's order of August 24, 1992.

~~Defendants' Statement.~~ ~~Defendants agree with plaintiffs' statements regarding discovery,~~ ~~except with regard to the second paragraph thereof.~~ ~~Counsel for defendants have clearly,~~ ~~unequivocally, and repeatedly advised counsel for plaintiffs that they are not entitled to take any~~ ~~further discovery depositions of any witnesses previously disclosed and that any such request would~~ ~~be vigorously opposed.~~

## 10.    WITNESSES AND EXHIBITS

Counsel are attaching and filing lists of witnesses as exhibits to this Pretrial Order.  Plaintiffs' witness list is attached as Exhibit A.  Defendants' list is attached as Exhibit B.

Counsel will list and exchange proposed exhibits ~~at a later time to be agreed (as discussed~~ ~~with the Court at the status conference on July 30, 1993).~~ no later than March 13, 1998.  Plaintiffs' exhibit list will later be attached to this Pretrial Order as Exhibit C.  Defendants' exhibit list will later be attached as Exhibit D.

Witnesses and exhibits listed by one party may be called or offered by the other party. Witnesses and exhibits not identified and exchanged as agreed or as required by this Order shall not be permitted to testify or be received in evidence, respectively.  The Clerk shall not issue any

30

subpoena duces tecum for exhibits not marked in compliance with this Order and the Civil Procedural Guidelines. Compliance with the provisions of this section of the Pretrial Order shall be required in all cases except by agreement of counsel or upon order of the Court, or in proper rebuttal.

## 11.   MOTIONS

There are no pending motions. By other written order, the court has set deadlines for the filing of motions in limine and other matters in advance of trial. The parties intend to file motion(s) *in limine* and/or for determination of issues of law in advance of trial.

## 12.   OTHER

Plaintiffs' Statement:—

Unless otherwise ordered, the parties will fully comply with the Civil Procedural Guidelines.

Defendants' Statement:

In view of the twelve plus year history of this case, and its special handling by Judge Crow per prior orders, this case should be exempt from the usual Civil Procedure Guidelines applicable in this Court. [Any exceptions to the court's guidelines will be decided on an individual basis.]

## 13.   TRIAL

Plaintiffs' Statement: Trial will be by jury.

Defendants' Further Statement: Organization of Counsel. In accordance with the Manual for Complex Litigation, 2d Edition, defendant believe that the Court should find Subject to further

31

findings and modification, the court finds that the multiple party plaintiffs have similar positions in this litigation and that the multiple party defendants have similar positions in this litigation. ~~Defendants believe that the Court should also find the multiple party defendants have similar positions in this case.~~ Each side shall therefore designate an attorney with principal responsibility for the conduct of each phase of trial, including the designation of attorneys to take the major role in presenting opening statements, in examining particular witnesses, in making and responding to motions and objections, and in presenting arguments to the court. Other counsel shall be permitted to supplement opening statements highlighting any special, non-cumulative points relevant to any claim or defense of a particular party and to conduct additional non-cumulative examination of witnesses relevant to the claim or defense of that party, if it be demonstrated to the satisfaction of the Court that the position of such particular party is materially different from the position of other parties on that side of the case. An objection, motion, or offer of proof by one party shall be deemed made on behalf of all similarly situated parties who do not disclaim it; such parties may, however, make known any additional grounds or circumstances pertinent to the admissibility of the evidence with respect to them. ~~(MCL 2d § 41.7)~~

~~Plaintiffs' Response: Plaintiffs believe it is premature to make specific rulings on parties' organization of their trial presentations.~~

## 14. TIME AND PLACE OF TRIAL

Trial will be in Topeka, Kansas. Trial will be to a jury, and trial will begin at 1:30 p.m. on April 6, 1998.

32



## 15.    TRIAL TIME AND SETTLEMENT PROSPECTS

Plaintiffs' Statement:

a.      Estimated trial time is 4-6 weeks.

b.      Settlement prospects are poor. The parties will be participating in a settlement conference scheduled for February 24 and 25, 1998.

Defendants' Statement:

a.      Estimated trial time is 4-6 weeks.

b.      Settlement prospects have previously been explored.  Defendants will participate in good faith in ADR by mediation as ordered by the Court, under guidelines to be agreed upon by counsel for the parties.


IT IS SO ORDERED, and this Pretrial Order to the extent it conflicts shall supersede pleadings and control the future course of the action unless modified to prevent injustice.

Dated this _____ day of January, 1998, Topeka, Kansas.


_____
Sam A. Crow, U.S. District Senior Judge


33