


IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

WILLIAM I. KOCH, et al.,

Plaintiffs,

Vs. No. 85-1636-SAC

KOCH INDUSTRIES, INC., et al.,

Defendants.

MEMORANDUM AND ORDER

This case has been on file since 1985. Trial is set to commence on April 6, 1998. This court has shepherded this case since its inception. In addition to deciding innumerable other matters, the court dedicated several months of its time to deciding a massive motion for summary judgment. *See Koch v. Koch Industries, Inc.*, 969 F. Supp. 1460 (D. Kan. 1997) (337-page opinion granting in part and denying part the defendants' motion for summary judgment).

On March 23, 1998, ***in direct response to the requests of the***

763

***parties***,[1] the court entered an order it deemed necessary to insure a fair trial in this case. The order would properly be characterized as a gag order. That order has four components. First, the court entered an order preventing any party, or their agent or representative, from contacting or polling, for *any* purpose, any person listed as a prospective juror in this case. The court also precluded any party, or their agent or representative, from conducting any poll of any person in the seventeen counties from which the Topeka Division jury pool is drawn, *see* D. Kan. Rule 38.1, in regard to their knowledge or opinion of any person or entity connected with this case or with regard to any issue relating to this case. Second, the court entered an order under the authority granted by D. Kan. Rule 83.2.3, precluding all parties, counsel and witnesses from making extrajudicial

---

[1] The court's March 23, 1998, order, contains the following quotes from the plaintiffs' brief:

> The plaintiffs "move for an order pursuant to D. Kan. Rule 83.2.3 prohibiting any of the parties, attorneys and witnesses in this case from making any extrajudicial statements to the press or from otherwise using their influence to encourage the generation of prejudicial publicity prior to or during the trial."

The court's order also contains the following quote from the defendants' brief:

> [T]he defendants wholeheartedly agree that "the court should enter an order, pursuant to 83.2.3 and (sic) applicable to all parties and their representatives (including the Koch Crime Commission), that precludes any further extra judicial statements to the media about this case or any disparaging comments about the parties or witnesses, or advertising in the Topeka area by either side (including the Koch Crime Commission), until the conclusion of the trial of this case."

statements to the news media regarding this case until further order of this court. Third, under the unusual circumstances of this case, the court entered the following order:

> **No party, or any business, association, entity or commission controlled by a party (including the Koch Crime Commission), shall place any advertisement or commercial which is directly related to or connected with any party, or any business, association, entity or commission controlled by a party, in any medium, including the newspaper, radio or television (including Kansas City or Wichita channels available through cable) which is reasonably likely to reach persons residing in the 17 counties comprising the Topeka Division.**

The ban on advertising by any party, or any business, association, entity or commission controlled by a party, took effect at the time the court's March 23, 1998, memorandum and order was filed.[2] In its order the court indicated that it would," of course, consider objections to this aspect of this order." Fourth, the court indicated that it would admonish the jury by letter as follows:

> **As you know from the jury questionnaires that you completed, the name of the case in which you may serve as a juror is William I. Koch, et al., v. Koch Industries, Inc., et al., Case No. 85-1636-SAC. It is possible that newspaper and magazine articles, or radio and television broadcasts, may contain information about the parties or issues in this case. If chosen as a juror in this case, it will be your sworn obligation to base your decision solely on the evidence admitted at trial. Anything you may see or hear outside the courtroom is not evidence, and must be entirely disregarded. As a prospective juror, I instruct you that from this point in time, and through and including the time you are released from service, you shall make every effort to avoid reading any written materials, such as newspaper or magazine**

---

[2] On March 24, 1998, the court clarified the parameters of its March 23, 1998, order as it applied to NationsBank.

> **articles, and to avoid listening to any radio programs, or to avoid listening or viewing any television programs which may relate to this case. Under no circumstance should you undertake your own investigation of the facts of this case. I further instruct you to avoid any discussions or debates about this case with anyone until I release you from jury service.**

This admonition was sent with the notice instructing jurors to report for duty on April 6, 1998.

This case comes before the court upon the "Motion to Intervene" (Dk. 736) pursuant to Fed. R. Civ. P. 24(a) filed by the Kansas Press Association, the Kansas Association of Broadcasters, *The Wichita Eagle, The Topeka Capital-Journal, WIBW-TV, The Kansas City Star, Wichita Business Journal* and Harris Enterprises, Inc.[3] In that motion, the movants contend that they have a compelling interest in any effort to restrict access to information and that the court's order directly and adversely affects their First Amendment rights. The movants challenge the second component of the court's order, arguing that the restriction on extrajudicial statements not only restricts the "persons named therein" but also impedes their ability to gather news. As to the third component, the movants contend that the court's advertising ban impairs the parties' First Amendment rights of free speech, the parties' interest in commercial speech, and their own self-interest in revenue derived from selling advertising

---

[3] The movants have also filed a "Motion for Expedited Hearing on Motion to Intervene" (Dk. 737).

space and time. In short, the movants contend that the court's order is overbroad, is not based upon any evidence, and fails to adequately consider less restrictive means of insuring a fair trial to the litigants.

**Intervention under Fed. R. Civ. P. 24(a)(2)**

Fed. R. Civ. P. 24(a)(2) provides, in relevant part, as follows:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). "Accordingly, an applicant may intervene as of right if: (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties." *Coalition of Arizona/New Mexico Counties v. DOI*, 100 F.3d 837, 840 (10th Cir. 1996) (quoting Fed. R. Civ. P. 24(a)(2)). "'Failure to satisfy any one of these requirements is a sufficient ground to deny the application.'" *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2nd Cir. 1996) (quoting *Farmland Dairies v. Commissioner*, 847 F.2d 1038, 1043 (2d Cir.1988)).

**Prior Restraint and the First Amendment**

"News gathering is an activity protected by the First Amendment."

*Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).

> Even though the first amendment does not invalidate every burdening of the press, *id.* at 682, 92 S.Ct. at 2657, or provide an unrestrained right to gather information, *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965), any inhibitions against news coverage of a trial carry a heavy presumption of an unconstitutional prior restraint. *Sherman*, 581 F.2d at 1361. If a court order burdens constitutional rights and the action proscribed by the order presents no clear and imminent danger to the administration of justice, the order is constitutionally impermissible. *See CBS, Inc. v. Young*, 522 F.2d 234, 240 (6th Cir. 1975). A court may impose a prior restraint on the gathering of news about one of its trials only if the restraint is necessitated by a compelling governmental interest. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07, 102 S.Ct. 2613, 2619-20, 73 L.Ed.2d 248 (1982) (dealing with criminal trials); *Haeberle v. Texas International Airlines*, 739 F.2d 1019, 1021 (5th Cir. 1984); *Express-News*, 695 F.2d at 810; *Sherman*, 581 F.2d at 1361. Moreover, the court must narrowly tailor any prior restraint and must consider any reasonable alternatives to that restraint which have a lesser impact on first amendment rights. *Globe Newspaper Co.*, 457 U.S. at 607, 102 S.Ct. at 2620; *Levine v. United States District Court*, 764 F.2d 590, 595 (9th Cir. 1985); *Express-News*, 695 F.2d at 810; *Sherman*, 581 F.2d at 1361. These requirements apply for criminal trials as well as civil trials. Of course, the weight to be assigned the factors may vary just as the interests of the opposing sides may vary in the context of particular cases.

*Id.*

**Overview**

The court agrees that its March 23, 1998, order imposed limitations broader in scope than the limitations generally imposed in other cases ordering prior restraints of speech. However, and as the movant's should have gleaned

from the court's March 23, 1998, order,[4] the restraints on speech and advertising imposed by the court were in direct response to the requests of the parties; the parties expressly asked for the restraints imposed by the court's order. A review of the parties' respective briefs filed before the entry of the March 23, 1998, memorandum and order clearly supports that conclusion.

The court also agrees that under ordinary circumstances, it is generally appropriate to conduct a hearing before imposing a prior restraint on speech. This case, however, is atypical--an observation which any objective observer would acknowledge. The court's substantial involvement in this case since its inception has afforded it even greater insight into the complexities of this case and the machinations of its participants. The unusual circumstances of this case warranted the order entered by the court.

Contrary to the movants' suggestion, the court carefully balanced the parties' and public's interest in a fair trial against the competing interest in freedom of speech. Prior to entering its March 23, 1998, order, the court

[4] The movants' brief repeatedly suggests that the court's order was made without the consideration of any evidence or reasonable consideration of the legal principles involved in the matter before it. These arguments are not based upon a reasonable review of the court's March 23, 1998, order or the briefs, exhibits and other materials contained in the court file. Although the news media is at liberty to report only the portions of the court's March 23, 1998, memorandum and order that it deems newsworthy, counsel filing pleadings in civil cases in federal court are bounded by the constraints imposed by Fed. R. Civ. P. 11 and should in the future strive to adhere to the minimum standards it imposes.

considered the express desires of the parties, the unusual circumstances of this case, the evidence offered[5] and proffered by the parties, as well as the court's own knowledge of this case. The court also considered prospective juror's responses to the juror questionnaires issued in regard to this case. Based upon the court's extensive review of the jury questionnaires, it is apparent that the media's attention to this case has already influenced and potentially biased some prospective jurors. After considering all of the relevant factors, the court agreed with the parties that extrajudicial statements, including advertisements by the parties, posed a clear and present danger to obtaining a fair and impartial verdict in this case.[6] The court acted promptly based upon the express desires of the parties and in the public interest of conducting a fair trial in this case. The court believed that action to be necessary, particularly in light of the fact that the jury

[5] The court reviewed exhibits attached to the parties' respective motions, including a videotape of an interview of Charles Koch conducted by KAKE-TV, the Wichita, Kansas, ABC affiliate. In the third segment of that interview, Charles Koch and William Koch discuss their respective views of this case. In part, these interviews demonstrate the need for the prior restraint requested by the parties.

[6] Prior to imposing a total ban on extrajudicial statements by the parties, counsel and witnesses, the court of course considered less restrictive restraints such as those imposed in *United States v. McVeigh*, 931 F. Supp. 756, 760-61 (D. Colo. 1997) (setting forth specific restraints on extrajudicial statements by counsel and others connected with the prosecution for the bombing of the Murrah Building in Oklahoma City). Under the circumstances of this case, the court agreed with the parties that a total ban on extrajudicial statements to the news media was appropriate.

has not yet been impaneled but already knew from answering the jury questionnaires that the name of this case was *Koch v. Koch Industries, Inc.* Nothing argued by the movants convinces the court that its order was improvident.

**Standing**

As a necessary predicate to intervention, the movants must demonstrate that they have standing. In other words, the movants must allege an injury in fact--that the court's order impeded their ability to gather news and "that impediment is within the zone of interest sought to be protected by the first amendment." *Mechem*, 801 F.2d at 1235.[7] *See Focus v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3rd Cir. 1996) ("'We have routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings.'" (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (footnote omitted)).

> That putative recipients of speech usually have standing to challenge orders silencing would-be speakers does not necessarily mean that the plaintiffs in this case have standing, however. The plaintiffs still must show that the gag orders have caused them injury in fact and that their injury is likely to be redressed by a favorable decision. *See, e.g., United States v. Hays*, --- U.S. ----, ----, 115 S.Ct. 2431, 2435, 132

---

[7] In *Mechem*, the Tenth Circuit apparently agreed that the news media's argument that it had standing to challenge an order prohibiting the jurors from discussing their verdict with anyone.

L.Ed.2d 635 (1995) (setting forth the three elements necessary to satisfy "the irreducible constitutional minimum of standing").

Accordingly, courts have found that third parties have standing to challenge a gag order only when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so. *E.g., In re Dow Jones*, 842 F.2d at 607 (determining whether the recipients have standing required the court first to examine "[w]hether the [plaintiff] news agencies are actually potential receivers of otherwise restrained speech"); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 787 n. 12 (1st Cir. 1988) (emphasizing that the third party had standing to challenge a protective order because "far from agreeing to the protective order, the plaintiffs to this action have opposed the protective order at every stage" and the speech, therefore, would be available); *Radio & Television News Ass'n v. District Court,* 781 F.2d 1443, 1448 (9th Cir. 1986) (holding that the press lacks standing to assert the free speech rights of another when the person subject to the gag order has not challenged it).

*Id.* at 838-39.

On March 27, 1998, the court conducted the final status conference in this case. That proceeding was held in open court. At the end of the conference the court referred the parties to the movants' motion to intervene. The court specifically asked the parties if the court had misunderstood their requests for prior restraint, and further, asked the parties if they had any objections to the court's restraint of extrajudicial statements or any objections to the court's ban on advertising. **No party or counsel objected to either aspect of the court's March 23, 1998, order.** In fact, all parties agreed that the court had provided the relief that they had requested. Lead counsel for both sides expressed great enthusiasm for the order entered by the court, as the news media

had previously been playing one side off the other in an effort to pry information from the litigants or their counsel. In short, all litigants eschewed any desire to talk with the news media about this case.

Based upon these repeated statements by the parties and their counsel, the court finds that the movants do not have standing to challenge the court's order insofar as it prohibits the parties, counsel or witnesses[8] from discussing this case with the media. *See Focus*, 75 F.3d at 839 ("The plaintiffs must prove that the Baby Byron parties are willing to talk publicly about that case. If the district court, at any point, concludes to the contrary on the basis of an appropriate record, then it should proceed no further."). In light of the litigants' most recent statements, the litigants' past willingness to talk to the news media does not confer standing to the movants. Similarly, to the extent that the movants' standing to challenge the provision of the order banning advertising in the Topeka Division turns upon the First Amendment rights of the parties themselves, the movants also lack standing.[9] More importantly, by this order,

---

[8] The majority of the witnesses are parties or persons closely aligned to the parties. No witness has voiced any objection to the court's order, nor have the movants identified such a person.

[9] While this opinion was in draft, the court first learned of the "Motion of Koch Crime Commission for Relief From Order Prohibiting Advertising" (Dk. 741). In that motion, the Koch Crime Commission seeks relief from the court's March 23, 1998, order, arguing that it is not controlled by William Koch as proffered by the defendants. The defendants therefore arguably have standing to challenge the ban on advertising to the extent it affects the Koch Crime

the court dissolves the ban on advertising as of 1:00 p.m. on April 6, 1998--the time jury pool is first called to serve in this case. Any person or entity requesting more immediate relief must seek reconsideration of this order.

To recap, the ban on advertising imposed by the court was primarily intended to prevent the parties from inundating the public--including potential jurors--with self-aggrandizing messages during the critical time immediately before trial but after the time the persons in the jury pool were aware that they are potential jurors in this case. Although the court's written admonishment to potential jurors minimizes the danger that outside influences will impair their ability to fairly consider the matters submitted to them, the court believes it more prudent for the court to further elaborate on these issues once the jury is empaneled. These admonishments, taken together, will adequately address the parties' concerns about unfair or prejudicial advertising and its potential effect on the jury. In fact, the movants' own motion recognizes that important distinction.

---

Commission.

Even though the movants may have standing on this issue, it is not clear that they have satisfied their burden of showing that the representation of the Koch Crime Commission's interest in freedom of speech is inadequate. *See Coalition of Arizona/New Mexico Counties*, 100 F.3d at 844-45. In light of the court's decision to dissolve the ban on advertising on April 6, 1998, at 1:00 p.m., the court need not resolve this issue at this time. This ruling also obviates the need for the court to decide whether or not the movants' own financial interest is sufficient to confer standing to challenge the ban on advertising.

So that it is absolutely clear, the court may sua sponte, or upon motion of any party, reconsider its dissolution of the ban on advertising if any party or related entity[10] engages in an unfairly prejudicial publicity campaign during the pendency of this trial.

IT IS THEREFORE ORDERED that the movants' "Motion to Intervene" (Dk. 736) is denied.

IT IS FURTHER ORDERED that the movants' "Motion for Expedited Hearing on Motion to Intervene" (Dk. 737) is denied as moot.

IT IS FURTHER ORDERED that the "Motion of Koch Crime Commission for Relief From Order Prohibiting Advertising" (Dk. 741) is denied as moot. The prohibition contained in the court's March 23, 1998, memorandum and order, and as clarified on March 24, 1998, which provided:

---

[10] The Koch Crime Commission adamantly argues it is separate and distinct from William Koch. The Koch Crime Commission's brief indicates that it has made every effort to avoid showcasing William Koch personally and that it will continue to do so during the pendency of this case. The Koch Crime Commission also indicates that it "will endeavor to ensure that these [public service] spots contain absolutely no reference to Bill Koch or any other party to this litigation."

The Koch Crime Commission's argument that it is separate and distinct from William Koch and that he does not control it is belied by the affidavit of one of its own employees, Nancy Myers. The affidavit was attached as Exhibit B to the plaintiffs' "Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt and For Order Prohibiting Extrajudicial Statements to the News Media" (Dk. 715). Ms. Myers affidavit clearly suggests that she believes that she is working for William Koch, albeit she is apparently employed by the Koch Crime Commission.

**No party, or any business, association, entity or commission controlled by a party (including the Koch Crime Commission), shall place any advertisement or commercial which is directly related to or connected with any party, or any business, association, entity or commission controlled by a party, in any medium, including the newspaper, radio or television (including Kansas City or Wichita channels available through cable) which is reasonably likely to reach persons residing in the 17 counties comprising the Topeka Division.**

is dissolved as of 1:00 p.m. on April 6, 1998.

Dated this 2nd day of April, 1998, Topeka, Kansas.

Sam A. Crow, U.S. District Senior Judge